1             UNITED STATES COURT OF APPEALS
               FOR THE THIRD CIRCUIT

2

3     THE ALBERT BRANSON MARIS COURTROOM (19TH FLOOR)

4

5  STEVEN PLAVIN          )  No. 18-2490
                      )

6  vs.                )  DATE:  March 15, 2019
                      )

7  GROUP HEALTH INCORORATED   )  10:30 a.m.-11:26 a.m.
  -------------------------------------------------

8

9

                      APPEAL
10        BEFORE THE HONORABLE THEODORE MCKEE,
  HONORABLE JANE R. ROTH, AND HONORABLE JULIO M. FUENTES
11           UNITED STATES CIRCUIT JUDGES

12

13

14

15

16

17

18

19

20

21

22          VERITEXT LEGAL SOLUTIONS
           MID-ATLANTIC REGION
23       1801 Market Street — Suite 1800
         Philadelphia, PA  19103

24

25

```
 1   APPEARANCES:
 2   For Appellants:          HALLEY W. JOSEPHS, ESQ.
                              SUSMAN GODFREY
 3                            1301 Avenue of the Americas
                              32nd Floor
 4                            New York, NY 10019
 5   For Appellees:           JOHN GLEESON, ESQ.
                              DEBEVOISE & PLIMPTON
 6                            919 Third Avenue
                              New York, NY 10022
 7
     ESR Operator:            UNKNOWN
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1               P R O C E E D I N G S

2               JUDGE MCKEE:  The next matter is Plavin

3    versus Group Health Incorporated.

4        (Pause)

5               MS. JOSEPHS:  Good morning, may it

6    please the Court, Halley Josephs with Susman Godfrey

7    on behalf of the plaintiff and appellant, Steven

8    Plavin.

9               This a case about GHI's deceptive

10   conduct in misleading hundreds of thousands of

11   consumers about out-of-network reimbursements --

12              JUDGE MCKEE:  But it's really a case

13   about what does consumers mean, right, under the GBL?

14   I know I've got unjust enrichment claims, but let's

15   focus on the GBL, because that seems to be the nuts

16   and bolts of that.

17              MS. JOSEPHS:  Absolutely, Your Honor,

18   that is the primary issue on this appeal.  The --

19              JUDGE MCKEE:  And your best case is

20   Oswego?

21              MS. JOSEPHS:  Best case is Oswego and

22   all of the cases that trickle down from there.  You

23   have the Elacqua versus Physicians' Reciprocal

24   Insurers case that involved medical malpractice

25   insurance.  That was not a case where there was any

Page 4

1    good or service directed to the public at large.

2    Medical malpractice insurance is only available to

3    licensed medical professionals.  And what those --

4    what that case and what other insurance-based GBL

5    claims have repeatedly held is the question is whether

6    there is standardized conduct such that it potentially

7    affected similarly situated insureds.

8                    And these courts both at the New York

9    Court of Appeals level as well as at the Appellate

10   Division level and Federal Courts applying this law

11   have all recognized that in the insurance context harm

12   to numerous insureds is sufficient to satisfy this

13   element of the claim.

14                   JUDGE MCKEE:  Who are the folks who are

15   being harmed in the Elacqua case?  And I'm reading --

16   I'm quoting from the opinion that GBL claims "must be

17   predicated on an act or practice which has the

18   potential to affect the public at large as

19   distinguished from really a private contractual

20   dispute."  And there it was the physicians, right, who

21   were damaged the practice?

22                   MS. JOSEPHS:  Correct, those were the

23   insureds.

24                   JUDGE MCKEE:  Uh-huh.

25                   MS. JOSEPHS:  They were not informed

Page 5

1   that they had the right to choose their own defense

2   counsel in malpractice proceedings and so they thought

3   that they had to take the insureds offered by the

4   insurance company when the incentives and the

5   positions that the insurer and the doctor would take

6   were not always aligned.  But that's just one example.

7              You have repeated cases where the

8   deceptive conduct didn't occur until someone --

9              JUDGE MCKEE:  Actually who -- do you

10  know, and maybe it's not in the record and I didn't

11  read the case looking for it, but the question just

12  occurred to me -- who negotiated the contracts in

13  Elacqua and Millennium is another case very similar to

14  that and Wilner -- who negotiated those contracts?

15  Was that the individual doctors, was it the state

16  insurance agent?  How did the contract come about?

17             And the reason I'm asking that is here

18  the situation is, as I understand it, the contract at

19  issue was arranged between the New York Labor Board

20  and unions on one side and the insurer on the other,

21  and that seems to me to be very different and a very

22  unique situation.

23             And I'll get into that in a few minutes

24  in terms of what I think GBL is trying to establish,

25  but do you know who negotiated those contracts?

1           MS. JOSEPHS:  I don't know it in those

2    cases, but what I do know is that under the statute

3    there is no language excepting conduct where there's a

4    contract in the background where there's some

5    sophisticated party that might have given access to

6    the consumers.

7           JUDGE MCKEE:  Well it's not in the

8    contract but the whole thrust of 349 and 350 seem to

9    be almost like an anti-caveat emptor situation, that

10   you want to make sure that the full consumer is not

11   taken advantage of by fraudulent actions or fraudulent

12   advertisers, it's not just buyer beware, so you've got

13   a statute there to protect the "consuming public" at

14   large.

15           If you have a situation where it's

16   negotiated -- and this was NYU -- if you have a

17   situation where you have a sophisticated entity

18   negotiating the contract, not just a sophisticated

19   entity, but a sophisticated entity whose interest is

20   that of the people whom you're claiming is the class

21   of plaintiffs here, the union members, it seems like a

22   very different situation than something that could

23   generally impact the overall public.  And what am I

24   missing in looking at the case that way?

25           MS. JOSEPHS:  Well in the NYU case the

1    sophisticated party was itself the insured, and it was

2    disputing a denial of benefits under a commercial

3    crime insurance policy that it had tailored to its own

4    benefit.  There was no well-pled allegation that this

5    was a common act that affected many other

6    universities.

7                     I mean all signs in that case are that

8    it involved a denial of a claim for benefits and a

9    dispute that was unique to that insurance company and

10   that insured for that particular claim.

11                    JUDGE MCKEE:  But here the dispute is

12   unique to this group of plaintiffs, the union members.

13   Now, I grant you the doctors in Elacqua and

14   Millennium, and I'm not quite sure how to look at

15   that, but that does seem to get around that.

16                    But the harm -- the potentially harmed

17   group here is very narrow, you have to be in this

18   union to get this policy, this policy was not offered

19   to anybody living in the Bronx or Manhattan or in New

20   York City, you had to be a member of the union to get

21   this policy.  That does seem, even though the numbers

22   are different like NYU, and the number, it seems to me

23   NYU they focused on also the cost of the premium.  I

24   don't know what the cost was there, but this is a $2

25   billion premium that was paid, which seems much more

Page 8

1    akin to NYU.

2              MS. JOSEPHS:  Your Honor, aggregating

3    all of the premiums of the individual insureds and

4    their families is not appropriate in this case.  This

5    is about what GHI told consumers.  They had -- this

6    wasn't a case of where there was no interaction

7    between GHI and the insureds.

8              There were 11 plans that insured could

9    choose from and GHI was jockeying for a position, it

10   wanted these insureds' dollars.  They directed their

11   premiums to be paid to GHI or to one of the ten other

12   insurance companies that had plans available.  And so

13   that's just one aspect of it was the plan choice.

14             JUDGE ROTH:  Let me ask you a question.

15   I tended in the beginning to think that NYU was

16   applicable until my law clerk persuaded me that this

17   is a case where although the contract was negotiated

18   between the union, the City of New York, and the

19   company, that because the insurance company as one of

20   11 companies offering insurance in New York City

21   wanted to get the lion's share it was communicating

22   directly to the employees to get them when they made

23   their selection of what insurance to pick to select

24   the defendant and that it was this direct

25   communication between the 900,000 insureds and the

Page 9

1    insurance company that you are concerned about rather

2    than the negotiation of the underlying contract

3    between the city and the union and the insurance

4    company.  Is that an appropriate view to take of the

5    situation?

6                    JUDGE MCKEE:  You better say yes.

7                    MS. JOSEPHS:  Yes.

8                    JUDGE MCKEE:  Yeah.

9         (Laughter)

10                   JUDGE MCKEE:  Normally that's called a

11   softball.

12        (Laughter)

13                   MS. JOSEPHS:  That's exactly right,

14   Judge Roth, and I mean if you look at the language of

15   the statute, "Deceptive acts or practices in the

16   conduct of any business, trade, or commerce or in the

17   furnishing of any service in this state are hereby

18   declared unlawful."

19                   It doesn't say except if you received

20   employer sponsored benefits where your employer was

21   there to protect you, that's not the -- legislature

22   not only did not intend to --

23                   JUDGE MCKEE:  But if the language is

24   that specific then NYU would not have been decided the

25   way it was.  That language is there but it's got to

1    mean something more and the New York Court of Appeals

2    has said -- they've not stopped it at statutory

3    construction, they've looked at whether or not it's a

4    "one-shot deal," they tried to look at whether or not

5    the entity being protected in a particular suit fits

6    within the class of consumers, whether or not

7    something is offered to the general public.

8                    I mean they have taken it very broadly,

9    the bottle of wine case kind of surprised me, but

10   that's not inconsistent with what I think what Judge

11   Roth is asking you or would certainly puts more light

12   on the case than NYU and maybe Elacqua was consistent

13   with that.

14                   MS. JOSEPHS:  That's right.  The New

15   York Court of Appeals has said that in the Small case

16   this statute applies to virtually all economic

17   activity.  There are no exceptions for insurance

18   companies, that's the --

19                   JUDGE MCKEE:  But then -- well you're

20   arguing more than you have to argue, because if that's

21   the case then NYU would have been decided differently.

22                   MS. JOSEPHS:  I disagree, Your Honor,

23   because --

24                   JUDGE MCKEE:  Well you just said that

25   the New York Court of Appeals looks at the statute and

1  says it applies to all economic activity.  NYU was

2  very much economic activity, but the statute didn't

3  apply.

4              MS. JOSEPHS:  And that's because there

5  wasn't potential harm to numerous consumers, there was

6  only a claim of Continental Insurance Company denied

7  this specifically for coverage and it did so on a bad

8  faith or otherwise improper basis.

9              What our -- how our case differs is

10  it's not about Mr. Plavin complaining about how the

11  insurance company handled his hip replacement or other

12  surgery, it's about the uniform standardized treatment

13  that applied to -- across this group of consumers.

14              And just to address the general

15  public --

16              JUDGE MCKEE:  When you said this group,

17  you know that is where I'm having a problem.  Help me

18  with that.  You said this --

19              MS. JOSEPHS:  Sure.

20              JUDGE MCKEE:  -- group of consumers.

21  When you have a discrete group of consumers help me

22  understand how that fits into 349 and 350 if the group

23  is by definition very, very limited and very contained

24  and the member or the general public is not eligible

25  to get into that group?

Page 12

```
1                    MS. JOSEPHS:  Because there is no

2       general public requirement, there's just a requirement

3       that it -- that the conduct harm more than the

4       particular plaintiff who's suing, and we establish

5       that here with hundreds of thousands of city employees

6       and retirees who received these materials, who were

7       not given access to the fee schedule that had not been

8       touched since 1983.

9                    To point you towards two cases that say

10      consider and reject this general public requirement,

11      first you've got the Koch versus Greenberg case, which

12      was the wine seller case.

13                   JUDGE MCKEE:  Yeah, but there if you

14      had the money any member of the general public

15      applied.  Anybody could have walked into that wine

16      store and paid that outrageous price for some grape

17      juice, old grape juice.  So that -- you can't say that

18      doesn't apply to the general public.

19                   MS. JOSEPHS:  Well the Second Circuit

20      there did say the high prices and the specialty nature

21      of those wines that were available at auction did

22      preclude the involvement of the general public, but

23      they still rejected the defendant's argument that this

24      conduct couldn't be consumer-oriented as a result,

25      because the language in Oswego and Gaidon and other
```

Page 13

1  cases is does the conduct potentially affect other

2  similarly situated insureds?

3          And so with that similarly situated

4  language that's why you can have what maybe Your Honor

5  would call a discrete group of individuals even though

6  they number in the hundreds of thousands but they were

7  still uniformly subjected to this deceptive conduct.

8          JUDGE MCKEE:  But even in Oswego

9  anybody -- it happened between two sophisticated

10  entities but anybody who walked into that bank was

11  going to get -- (indiscernible) now -- was going to

12  get a signature card and it was coded in a way that

13  would mislead them about whether or not that was an

14  interest bearing account.

15          MS. JOSEPHS:  Sure, but the courts have

16  repeatedly recognized that members of the consuming

17  public are not all targeted or even have access to

18  certain goods or services across the board, and the

19  Elacqua case that I cited earlier about medical

20  malpractice proves that point.

21          The other point I want to make, Judge

22  McKee, you mentioned that I believe the EmblemHealth

23  or Millennium Health case that involved GHI's parent

24  company who made the exact same argument except the

25  difference there was that they argued since the

Page 14

```
1   conduct was only directed to their members, regardless
2   of where that insurance came from and the case does
3   not reveal the source of that insurance, but what they
4   argued there was the deceptive conduct that's being
5   complained about is only directed towards people who
6   are already members of our insurance plan, and --
7                 JUDGE FUENTES:  When you say deceptive
8   conduct can you be more specific?  I understand that
9   the insurer had been disseminating some information
10  that you claim was false or misleading, et cetera, et
11  cetera, but it also seemed that some of it was
12  inadvertent.  Can you be more specific about how the
13  insurer violated New York's consumer law?  It is New
14  York consumer law that applies.
15                 MS. JOSEPHS:  Yes.
16                 JUDGE FUENTES:  Or insurance law.
17                 MS. JOSEPHS:  Are you referring
18  specifically to Section 4226 or the GBL as well?
19                 JUDGE FUENTES:  Both.
20                 MS. JOSEPHS:  Okay.  Well the
21  deceptions here -- first of all the New York GBL does
22  not have a knowledge element.  If we prove knowledge
23  we can get treble damages under certain circumstances,
24  but there's no knowledge element.  So it does make
25  actionable claims that involve inadvertent conduct.
```

Page 15

1          We have alleged knowledge here through

2     both generally and specifically through the deceptive

3     concealment of the fee schedule, misrepresenting the

4     terms on which this schedule had been updated --

5          JUDGE FUENTES:  When you say deceptive

6     concealment could you be more specific about that?

7          MS. JOSEPHS:  Sure, Your Honor.  On the

8     fee schedule specifically the materials suggested that

9     consumers could visit GHI's headquarters in person to

10    inspect the schedule, but the complaint alleges in

11    paragraph 27 that -- and 7 -- that that was not true.

12    They have an office over by the Lincoln Tunnel that

13    you can allegedly go inspect the schedule.

14          JUDGE MCKEE:  Well couldn't you have --

15    I don't go near the Lincoln Tunnel, the traffic is

16    insane.

17       (Laughter)

18          JUDGE MCKEE:  But couldn't they also go

19    online?

20          MS. JOSEPHS:  They could not, Your

21    Honor, and they also could not access this information

22    when they called.  They were not provided access.

23          And where this is alleged is in the

24    changes that were made to GHI's practices towards

25    these insureds as a result of the New York Attorney

Page 16

1    General's assurance of discontinuance.

2                    One of the primary avenues of

3    prospective relief that the Attorney General ordered

4    was the creation of a member portal on GHI's website

5    that allowed members to look up.  I don't know and I

6    can't represent if it was every single potential

7    procedure, but it was many common procedures.

8                    JUDGE MCKEE:  Is it that circumstance

9    that is a basis for your fraud claim?

10                   MS. JOSEPHS:  Which circumstance?

11                   JUDGE MCKEE:  Well the circumstance

12   that they said that they had the information, you

13   could check it, and it's at an office somewhere near

14   the Lincoln Tunnel?

15                   MS. JOSEPHS:  Well we haven't brought a

16   fraud claim and we're not required to prove some of

17   the more heightened --

18                   JUDGE MCKEE:  Representation.

19                   MS. JOSEPHS:  I'm sorry?

20                   JUDGE MCKEE:  Is it misrepresentation?

21                   MS. JOSEPHS:  Yes, it's a

22   misrepresentation and it's primarily as far as the

23   availability of the schedule, that is a

24   misrepresentation, but they also omitted to inform

25   insureds of the frequency with which this fee schedule

Page 17

```
 1   was updated, the fact that it had no relationship to
 2   what is a typical PPO plan's payment scheme which is
 3   usual and customary rates, and omissions are equally
 4   actionable under the GBL.
 5                 What the New York courts have said is
 6   that's particularly true where the information that
 7   would have been highly material to reveal to consumers
 8   is uniquely within the defendant's conduct, and that
 9   is exactly what this fee schedule was, it was their
10   proprietary schedule of reimbursement rates that they
11   did not make available to consumers.
12                 So there was no way for consumers to
13   adequately figure out for different services that they
14   might incur in the future if they chose to go out of
15   network under this plan that was marketed specifically
16   as a comprehensive PPO with the freedom to choose any
17   provider worldwide.
18                 JUDGE MCKEE:  Did Mr. Plavin show in
19   the District Court that he himself suffered a harm,
20   that is that maybe he submitted a claim that was not
21   properly paid?
22                 MS. JOSEPHS:  Yes, he did, and that's
23   in paragraph 41 of the complaint, and that element
24   injury is undisputed by GHI at this stage or at least
25   it was not raised in the District Court below or on
```

Page 18

1   this appeal.

2                    JUDGE MCKEE:  Okay.

3                    MS. JOSEPHS:  I see my time has

4   expired.

5                    JUDGE MCKEE:  Well as you've seen we've

6   not been going crazy when the red light comes on.

7                    If there's another point you feel

8   compelled to make, you don't have to keep going, but

9   if you feel that you haven't been treated fairly in

10  terms of not getting a chance to get something out

11  briefly, briefly, briefly go ahead.

12                   MS. JOSEPHS:  If I may make one other

13  point.

14                   JUDGE MCKEE:  Why am I not surprised.

15                   MS. JOSEPHS:  Absolutely.

16       (Laughter)

17                   JUDGE MCKEE:  Shocked.  Shocked.

18                   MS. JOSEPHS:  While I'm here, Judge

19  McKee, thank you very much for your time.

20                   There is another aspect of the plan

21  that was highly misleading, it was the sale of this

22  additional rider to provide increased and enhanced

23  benefits for out-of-network coverage, and what GHI

24  didn't tell consumers in this summary that they

25  provided when they were trying to sell this additional

Page 19

1    coverage was that it excluded entirely all out-patient

2    out-of-network services, which accounted for 65

3    percent of members' out-of-network expenses during the

4    class period.  And this was information they could

5    have easily put in there.  They could have said this

6    rider covers certain in-network -- or I'm sorry -- in-

7    patient out-of-network expenses, but instead they

8    failed to reveal this information that would have been

9    highly material to insureds trying to decide do I want

10   to shell out even more money for this plan to provide

11   additional financial security for my family.

12              JUDGE FUENTES:  When you come back, if

13   you come back, you can tell me where in your complaint

14   you have alleged that Group Health knowingly violated

15   New York's insurance law.

16              JUDGE MCKEE:  Well he may know something I

17   don't, because you did save time for rebuttal I think,

18   and he's saying if you come back.  So he may know

19   something about that chair that I --

20        (Laughter)

21              MS. JOSEPHS:  I'd be happy to answer.

22              JUDGE MCKEE:  -- assume, you may not

23   want to sit down.

24              MS. JOSEPHS:  I'd be happy to answer

25   that very briefly now or --

Page 20

```
 1                    JUDGE MCKEE:  Why don't you wait until
 2     you come back.
 3                    MS. JOSEPHS:  Absolutely.  Thank you.
 4                    JUDGE MCKEE:  I'll assume you'll come
 5     back.
 6                    MR. GLEESON:  Good morning.
 7                    JUDGE MCKEE:  Good morning,
 8     Mr. Gleeson, pleasure to see you.
 9                    MR. GLEESON:  May it please the Court.
10                    JUDGE MCKEE:  It's weird, but --
11                    MR. GLEESON:  Pleasure to be here.
12                    JUDGE MCKEE:  (Indiscernible).
13                    MR. GLEESON:  Equally weird.
14                    I want to at the outset tell the Court
15     it's John Gleeson for the appellee.  At the outset say
16     it's our position and it's strongly felt that there
17     are no misrepresentations here and no misleading
18     comments that are complained about by Mr. Plavin,
19     but --
20                    JUDGE MCKEE:  In your --
21                    MR. GLEESON:  -- I'd like to --
22                    JUDGE MCKEE:  Well your brief gets into
23     that.  Help me with the Elacqua argument.  Ms. Josephs
24     receive made an excellent argument and I'm not sure --
25                    MR. GLEESON:  Sure.
```

Page 21

1              JUDGE MCKEE:  -- whether or not it's

2    convincing or not, but it really, really, is a

3    wonderful argument.  Thank you.

4              But what about Elacqua and Millennium,

5    how does that case not mean that you lose?

6              MR. GLEESON:  It means -- it doesn't

7    require us to lose at all, Judge, because there's a

8    very distinctive aspect to this case, and I'll suggest

9    to you even if we assume for argument sake that

10   there's some difficulty cases with respect to what's

11   consumer-oriented conduct and what isn't, shouldn't

12   get in the way of us deciding easy ones correctly.

13             And the reason this is an easy one is

14   there's no collective bargaining, there's no

15   intermediary in those cases that levels the unequal

16   bargaining power playing field that lies at the heart

17   of the GBL.

18             JUDGE MCKEE:  Well that's what I

19   thought but Ms. Joseph shot me down on that, I thought

20   persuasively, and she said look at the statute, and

21   that's not required.

22             MR. GLEESON:  Well what I would like to

23   do is invite the Court's attention -- I think there

24   are two New York Court of Appeals cases that place in

25   very sharp relief my suggestion to this Court at the

Page 22

1   fact that this was a negotiated contract of insurance

2   between the city which pays for it and the unions

3   which represent Mr. Plavin and the other employees and

4   retirees on the one hand and my client, GHI, on the

5   other, falls clearly on the not-consumer-oriented side

6   of the line.

7                    JUDGE ROTH:  Well the softball --

8                    JUDGE MCKEE:  Yeah.

9                    JUDGE ROTH:  -- the softball that I

10  threw to Ms. Josephs --

11                   JUDGE MCKEE:  You lobbed it, you didn't

12  throw it, (indiscernible).  You almost handed it to

13  her.

14       (Laughter)

15                   JUDGE ROTH:  -- I think demonstrates --

16  excuse me -- my concern that although the underlying

17  contract was negotiated between GHI and the city and

18  the union that the consumer-oriented conduct in

19  question here was the communications from the

20  insurance company directly to the insured, to the

21  union members, that if to induce them number one to

22  pick the GHI contract when they selected among the

23  contracts available to them and to get certain extra

24  coverage which the -- Plavin complains was not

25  accurately represented in the materials sent not to

Page 23

1   the city or the union but sent directly by GHI to the

2   insureds.

3             MR. GLEESON:  First, Judge, let's be

4   clear about it.  The information about which

5   Mr. Plavin complains wasn't sent by GHI, it was sent

6   by the city itself.  If I can invite your attention --

7             JUDGE MCKEE:  But that's what I

8   thought, there was --

9             MR. GLEESON:  -- the second -- excuse

10  me, Judge.

11            JUDGE MCKEE:  That's whey thought.

12            MR. GLEESON:  I'm not going to

13  interrupt you.

14       (Laughter)

15            JUDGE MCKEE:  I thought it was the city

16  that sent it out, but go ahead.

17            MR. GLEESON:  If I can invite your

18  attention to page 326 of the record.

19            The summary program description on

20  which this lawsuit is based is authored by the City of

21  New York Office of Labor Relations Employee Benefits

22  Program, which negotiated with the municipal unions,

23  negotiated to obtain the terms of this insurance with

24  GHI.  They're the ones who make the representations in

25  the summary program description.

Page 24

1              But more important than that let me --
2    and if I may invite the Courts' attention to the two
3    New York Court of Appeals cases decided ten months
4    apart that support my argument completely.
5              The first is the Oswego case where
6    people walk -- it's kind of an adorable case because
7    it's back when they actually had interest in the
8    savings accounts.  People go into the bank, they
9    receive generic descriptions of the saving account and
10   then there are account cards that Judge McKee
11   referenced, and the court there finds consumer-
12   oriented conduct because everybody gets handed
13   standard documents, every single customer is handed
14   the same document, and the deceptions about the
15   interest are offered to the public at large.
16             Ten months later the same court decides
17   the NYU case.  That case, like this one, involved a
18   contract of insurance negotiated by sophisticated
19   parties, and the terms, like this, not generic, they
20   were specifically tailored to the needs of the
21   insured, I'm going to invite the Court's attention to
22   where that is precisely said in this document.
23             JUDGE MCKEE:  But very different though
24   because that was a direct contract between NYU, right,
25   and the insurer, but that's not the case here.

Page 25

1                    MR. GLEESON:  It's -- well yes, it is a

2       direct contract here between the city --

3                    JUDGE MCKEE:  Not between the --

4                    JUDGE FUENTES:  Union members.

5                    JUDGE MCKEE:  Yeah.  Well it's between

6       the members -- the union they're saying.

7                    MR. GLEESON:  It's between the city and

8       GHI all for the benefit of the members.

9                    JUDGE MCKEE:  But this is a claim by

10      Mr. Plavin directly.  It's a class action, yes, but --

11                   MR. GLEESON:  It's a -- and he's the

12      third-party beneficiary of the contract of insurance.

13                   But if I can just finish this one

14      thought, please, Judge.  The -- what the Court of

15      Appeals says in NYU, and this is a quote, "This

16      transaction is wholly unlike that in Oswego which

17      involves standard forms and advice supplied to the

18      consuming public at large, and in which the parties

19      occupied disparate bargaining positions, the company

20      as opposed to the general public."

21                   And then the court goes on to say that

22      the case before the court is a private contract

23      dispute unique to these parties not conduct involving

24      the consuming public at large.

25                   So the key -- the reason for consumer

Page 26

1    protection laws generally, including in New York, is

2    to rectify that disparate bargaining power between --

3                    JUDGE ROTH:   Okay.  So you've got the

4    union members and you've got what 900,000 or so, can

5    they be considered consumers under the law?

6                    MR. GLEESON:   We're all consumers under

7    the law, Judge, but with respect to a complaint

8    regarding --

9                    JUDGE ROTH:   With respect to this

10   health insurance can they be considered consumers

11   under the law?

12                   MR. GLEESON:   For the purposes of GBL

13   no.  The conduct towards them in this case because of

14   the intermediaries, the sophisticated parties, they're

15   all unions and they're employers, the conduct of which

16   they complain is not consumer oriented.

17                   JUDGE ROTH:   So we have a choice of 11

18   different insurance companies, and I gather that what

19   was it the union or the city provided to the employees

20   what your choice is, but the complaint here is that

21   this choice was skewed because of misrepresentations

22   in what the GHI policy would provide, and because the

23   information was misrepresented as to what sort of, for

24   instance, in-patient out-patient services were

25   covered, what the out of --

Page 27

 1                    MR. GLEESON:  Out-of-network.

 2                    JUDGE ROTH:  -- out-of-network costs

 3     would be.  Now, this information, was it ever supplied

 4     directly from GHI to the union members?

 5                    MR. GLEESON:  Sometimes when there were

 6     changes.  If I can invite the Court's attention to a

 7     letter, these are common, there's several of them in

 8     the joint appendix, and I'll provide the cites in a

 9     moment, where when there was a change in the coverage

10     that was -- well let me get it for the Court.

11                    JUDGE ROTH:  Okay.  Now, these letters,

12     don't worry about --

13                    JUDGE MCKEE:  Yeah, don't take your

14     time now.

15                    JUDGE ROTH:  Yeah.

16                    MR. GLEESON:  No response to your --

17                    JUDGE ROTH:  These letters, did they

18     contain any of the misrepresentations that the

19     plaintiffs -- that Plavin is complaining about?

20                    MR. GLEESON:  No.

21                    JUDGE ROTH:  All right.

22                    MR. GLEESON:  But --

23                    JUDGE ROTH:  Did any information --

24     you've heard the complaints about misrepresentation of

25     information.  Now, whether -- I'm not asking you to

Page 28

1    admit that there are misrepresentations, but this

2    communication, did it go through the City of New York

3    from GHI or did it go directly from GHI to the

4    insureds?

5                    MR. GLEESON:  It goes from the city to

6    the insureds, but --

7                    JUDGE ROTH:  Okay.  So it goes from GHI

8    to the city first because otherwise the city wouldn't

9    know.

10                   MR. GLEESON:  Well no the city

11   negotiated these terms.

12                   JUDGE ROTH:  No -- okay.

13                   MR. GLEESON:  Which is precisely my

14   point.

15                   JUDGE ROTH:  But it got that

16   information from GHI.

17                   MR. GLEESON:  Well yeah, and --

18                   JUDGE ROTH:  Yeah.  Okay.  And then it

19   passed it on to the -- and for instance the rider to

20   get out-of-network coverage, was that made directly to

21   the insureds by GHI or did that go through the city?

22                   MR. GLEESON:  That representation is in

23   the same summary program description.  So --

24                   JUDGE ROTH:  Okay.  But were that

25   information in the summary program description, where

```
 1  did that -- did that information come directly from
 2  the city or did it go from GHI through the city to the
 3  insureds?
 4              MR. GLEESON:  The city -- what's in the
 5  record is an allegation that the -- GHI drafted that
 6  language, and I'm not suggesting that that matters
 7  even.  What happened is, and if I can --
 8              JUDGE ROTH:  Okay.  But what I'm asking
 9  you is, having drafted that language --
10              MR. GLEESON:  Yes.
11              JUDGE ROTH:  -- did they communicate it
12  directly to the insureds or did they communicate it to
13  the city who then passed it out to the insureds?
14              MR. GLEESON:  It's in the summary
15  program description provided by the city to its
16  employees.
17              JUDGE ROTH:  Okay.  So --
18              JUDGE MCKEE:  Who drafted the summary
19  plan description, was that the city and GHI together
20  or do we know?
21              MR. GLEESON:  Well the allegation is
22  that GHI drafted it, but let me suggest this.  Take
23  any union, the teamsters union negotiates with
24  BlueCross BlueShield for insurance for the teamsters
25  that's specifically tailored to them.
```

```
 1                    JUDGE ROTH:  The administrative office
 2    to the courts negotiates --
 3                    MR. GLEESON:  Correct.
 4                    JUDGE ROTH:  -- insurance for judges,
 5    right?
 6                    MR. GLEESON:  Right.
 7                    JUDGE ROTH:  I understand the concept.
 8                    MR. GLEESON:  They finish the
 9    negotiations.  It's the fact that they are
10    sophisticated parties negotiating the terms of the
11    insurance that renders the GBL inapplicable.  But of
12    course at the end of that process the -- whichever
13    union it is is going to say to whichever insurer it
14    concludes negotiations with, all right, draft up the
15    terms of what we agreed to on behalf of our members.
16                    So who drafts it passes in the night
17    I'll suggest to you with the heart of what makes the
18    GBL applicable, which is the absence of something to
19    rectify the disparate bargaining power between the
20    insurance company and the insured.
21                    I'm not suggesting that there aren't
22    cases out there where there is a proper application of
23    the GBL to insurance contracts between insurers and
24    members of the consuming public, but in those
25    circumstances there isn't this collective bargaining
```

Page 31

1   agreement apparatus.

2                    The complaint here I'll suggest

3   respectfully to the Court this is why you don't see

4   any of these cases.  The Elacqua case, none of these

5   cases involving the GBL involves someone, involves a

6   complainant who is represented by his or her own union

7   pursuant to collective bargaining in negotiating the

8   terms of the contract, and that's because in that

9   setting there is no disparate bargaining power that we

10  think will victimize the consuming public.

11                   Here we have the unions, municipal

12  unions, they're pretty strong in New York, the city --

13                   JUDGE MCKEE:  Not as strong as in

14  Philadelphia.

15       (laughter)

16                   MR. GLEESON:  The City of New York

17  Office of Labor Relations, they're acting on behalf of

18  Mr. Plavin.

19                   JUDGE FUENTES:  So would you say that

20  it would -- the union is the proper party in this

21  case, not the union member?  Is that what you're

22  suggesting?

23                   MR. GLEESON:  Well his complaint --

24  Mr. Plavin could be a proper party, he could for

25  breach of insurance coverage he could make that claim

Page 32

1   if there were some fraud in the inducement I suppose,

2   but this is a contract of which he is obviously, he

3   and all of his fellow former city employees obviously

4   the third-party beneficiary, he could bring a claim of

5   breach of coverage, he could -- so he had some

6   remedies.

7                   JUDGE ROTH:  Let me give you --

8                   MR. GLEESON:  But it's not a GBL

9   remedy.

10                  JUDGE ROTH:  -- a hypothetical.

11                  MR. GLEESON:  Okay.

12                  JUDGE ROTH:  GHI is one of ten

13  companies selected by the City of New York and the

14  unions to provide insurance coverage, and of course

15  GHI wants to get the lion's share of employees signing

16  up to get its coverage.  So it negotiates with the

17  city and with the union to create what its program

18  will be, but then in order to get more people to sign

19  up it -- when it prepares its brochure to go to the

20  union members it misrepresents what is being offered

21  by its plan.

22                  Is that a misrepresentation to

23  consumers because it will go through the city but

24  directly through the city to the consumers to induce

25  them to sign up for GHI's program as opposed to the

Page 33

1    other ten programs that are being offered?

2              MR. GLEESON:  If it's a negotiated

3    contract of insurance, I'm not suggesting there might

4    not be remedies, but those remedies are not under the

5    general business law of the State of New York because

6    in that context by definition when there are

7    sophisticated parties negotiating the insurance to a

8    closed set of members of the plan it is by definition

9    not conduct aimed at the general public.  It doesn't

10   matter if there are five people in the union or a

11   million people in the union, it distinguishes itself

12   from the core principal operating in Oswego --

13             JUDGE ROTH:  Well is this --

14             MR. GLEESON:  -- and in --

15             JUDGE ROTH:  -- because they're union

16   members or is this because the contract was negotiated

17   between people other than the union members?

18             MR. GLEESON:  It means because the

19   contracts were negotiated by their own unions and

20   their own employer and they were not involved in that

21   and therefore they were not subjected to the --

22             JUDGE ROTH:  Okay.  But they're saying

23   --

24             MR. GLEESON:  -- evils of disparate

25   bargaining power.

1              JUDGE ROTH:  -- we weren't involved in

2     the negotiation but what we are presented with to

3     induce us to sign up is a misrepresentation.

4              MR. GLEESON:  I understand the Court

5     and I -- and the way that worked, this is why you --

6     with all respect -- this is why you don't see GBL

7     cases brought by union members.  Their beef -- I'm

8     from Brooklyn --

9          (Laughter)

10             JUDGE MCKEE:  You have my condolences.

11             MR. GLEESON:  Their beef is with the

12    union.  Their union is not taking good care of them

13    because their union and their employer are sending

14    them incorrect information.  That's how -- they might

15    have a coverage claim against the insurance carrier,

16    but their beef in terms of misleading misses about the

17    coverage that they're employer and their union

18    negotiated for them is with the union.  That's really

19    why you'll never see -- you'll not see a case under

20    the GBL involving a union member's claim against an

21    insurer where it was negotiated by the unions and the

22    employer.

23             If I can make one more reference --

24             JUDGE MCKEE:  Go ahead.

25             MR. GLEESON:  -- this is the what I

Page 35

1    meant to invite to your attention earlier and I didn't

2    have the cite.  Here's a message sent directly to

3    Mr. Plavin, because he's a member, that announces a

4    change in the policy.  Dear -- and this is at page

5    309.  "Dear City of New York employee or retiree.  As

6    a result of negotiations between the City of New York

7    Labor Relations and the unions represented by the

8    Municipal Labor Committee, the following benefit

9    changes will become effective on April 1st, 2004."

10                There is a significant dispositive

11   intermediary between my client, the defendant in this

12   case, and the would be plaintiff under the GBL that is

13   what makes this case with all respect on the consumer-

14   oriented conduct easy.

15                I see --

16                JUDGE MCKEE:  But --

17                MR. GLEESON:  Yeah.

18                JUDGE MCKEE:  Go ahead.  Go ahead.

19                JUDGE FUENTES:  It seems to make Group

20   Health judgment proof.  I mean you really --

21                JUDGE MCKEE:  Well under the GBL.

22                JUDGE FUENTES:  Yeah, I'm sorry, yes.

23                MR. GLEESON:  Yes.

24                JUDGE MCKEE:  You could never file a

25   claim against the insurance company for fraudulent

Page 36

```
1    misconduct.  The union hasn't brought.  Are you saying
2    that the union is the proper party in this case?
3                    MR. GLEESON:  No, I'm saying --
4                    JUDGE FUENTES:  Assuming there's
5    misrepresentations.
6                    JUDGE MCKEE:  Yeah, assuming deceptive
7    conduct, misrepresentations.
8                    MR. GLEESON:  Well the plaintiff can
9    seek whatever recourse is available to him.  As a
10   practical matter plaintiff can --
11                   JUDGE MCKEE:  Are you suggesting that
12   the bargaining power -- bargaining parties are the
13   insurance company and the union --
14                   MR. GLEESON:  Yes.
15                   JUDGE MCKEE:  -- and the union is the
16   proper party to bring any claims of misrepresentation?
17                   MR. GLEESON:  Yes.  And the union is on
18   our side on this.
19                   Can I -- I do want to --
20                   JUDGE MCKEE:  What if the union member
21   relied on certain misrepresentations and to his or her
22   detriment, doesn't the union member have a claim
23   against the insurer?
24                   MR. GLEESON:  Union member might have a
25   claim against its own union.  It would have a claim
```

Page 37

```
 1   against the insurer, it --
 2                 JUDGE MCKEE:  But it's union -- I'm
 3   sorry -- it's the health group that is issuing
 4   statements upon which the --
 5                 MR. GLEESON:  Right.
 6                 JUDGE MCKEE:  -- union member relies.
 7                 MR. GLEESON:  There might be --
 8                 JUDGE MCKEE:  But that's the complaint.
 9                 MR. GLEESON:  Understood.  Excuse me
10   for interrupting you.
11                 There might be a breach of coverage
12   claim if the terms of the -- that are allegedly
13   incorrect promised coverage that doesn't -- is a
14   breach of coverage claim.  I'm just focusing based on
15   what Judge McKee mentioned right at the outset of
16   Ms. Josephs' very able argument, the limitations of
17   the GBL claim.  It's a consumer protection claim and
18   here the consumer, Mr. Plavin, is not dealing directly
19   with a company that has disparate bargaining power.
20   He has very important negotiators working on his
21   behalf.
22                 If I can just take a moment --
23                 JUDGE MCKEE:  Go ahead.
24                 MR. GLEESON:  -- I want to please
25   apprise the Court of how these things work together,
```

1    this -- the GBL, the Attorney General.  The Attorney

2    General is one of our regulators, and here the

3    Attorney General doesn't find fraud or

4    misrepresentations or deception except for the one

5    statement about whether the 1983 schedule has been

6    amended, and there the Attorney General itself didn't

7    dispute the accuracy in our statement.

8                    But rather the gravamen of the

9    proceeding that resulted in the assurance of

10   discontinuance is a complaint by our regulator, we

11   deal with them on a regular basis, that we were

12   providing insufficient information about the

13   availability of the -- insufficiently providing the

14   availability of their plan, insufficient information

15   about the limits and the reimbursement of out-of-

16   network coverage.

17                   JUDGE FUENTES:  Well it's not

18   insufficiency.  I think the plaintiff's claim is

19   inaccurate information.

20                   MR. GLEESON:  That's the plaintiff's

21   claim, but that's not what the Attorney General -- the

22   assurance of discontinuance even says, Judge, that's

23   what they say.  It's not what the Attorney General

24   said.  But here -- and the third insufficient

25   information that the Attorney General found

Page 39

```
 1   problematic was these unintended out-of-network
 2   providers.  So if you go to have a procedure in the
 3   hospital maybe the anesthesiologist is out of network
 4   and you might not know that.
 5             We're a company, we take the -- the
 6   Attorney General -- the Health Bureau of the Attorney
 7   General's Office in New York has almost 6,000
 8   complaints a year, resolves about 2900 of them.  We go
 9   in and we say of course we'll do this, we'll provide
10   more information so it's not insufficient, and we did
11   that.  We did it as part of the assurance of
12   discontinuance.  Do we disagree with the applicability
13   of the GBL, which by the way when the Attorney General
14   enforces it has a much lower standard.  It protects
15   the ignorant, the unthinking, the credulous.  Do we
16   disagree with all that?  Yes.
17             JUDGE MCKEE:  Take all of Brooklyn.
18        (Laughter)
19             MR. GLEESON:  But did we want to comply
20   with our regulator?  Yes, we did, and it produced an
21   assurance of discontinuance, that's how these get
22   resolved.
23             JUDGE FUENTES:  You mentioned the
24   Attorney General, but aren't the pleadings in this
25   case presumed to be true for purposes of a motion to
```

Page 40

1    dismiss?

2                MR. GLEESON:  The -- all well pled non-

3    conclusory factual allegations are, but to the extent

4    those factual allegations rely on inferences to be

5    drawn from statements that are before the Court, just

6    as Judge Mariani did.  Judge Mariani was -- looked at

7    these statements, looked at them in context, applied

8    the much more stringent standard that's applicable to

9    this case than was applicable before the Attorney

10   General, and concluded that no -- that as a matter of

11   law no reasonable person, reasonable consumer acting

12   reasonably could be misled in any material way by any

13   of these statements, and that's entirely appropriate

14   on a motion to dismiss.

15               If I can just finish the thought about

16   the situation this puts us in.

17               JUDGE MCKEE:  Just briefly.

18               MR. GLEESON:  We cooperate with our

19   regulator.  We agree to provide the information.  The

20   Oswego case, the Judge Judith case, statement in the

21   Oswego case about how the last thing the New York

22   legislature had in mind was a title wave of litigation

23   once there was a private right of action added to the

24   GBL.  The -- please keep in mind the incentives that

25   companies like ours will have to cooperate with

Page 41

1    regulators, to provide the more sufficient information

2    they ask for, if every time we do it the assurance of

3    discontinuance that results in turns into a consumer

4    class action.

5                    It's such a -- it's a much lower

6    standard, we're trying to do the right thing, and I

7    respectfully suggest that the way the GBL works, the

8    way the lower standard applicable to the Attorney

9    General's investigations work, and the higher standard

10   that was deliberately intended by the New York --

11   under New York law to restrict this type of case is

12   why this type of case should be restricted.

13                   Thank you --

14                   JUDGE MCKEE:  Thank you.

15                   MR. GLEESON:  -- for letting me

16   overstay my welcome.

17                   JUDGE MCKEE:  Thank you.  Ms. Josephs?

18                   MS. JOSEPHS:  Judge Fuentes, I first

19   want to address the question you asked me about where

20   knowledge for 4226 is pled in the complaint.  It's

21   pled generally in paragraph 69.  We know that even

22   under Rule 9(b) knowledge may be alleged generally and

23   that's precisely because it's a fact question that's

24   uniquely within the defendant's possession.

25                   I would also submit that paragraph 27,

Page 42

1  which talks about the purposeful concealment of the

2  fee schedule, supports an inference in our favor on

3  the knowledge that this information, if actually

4  revealed to consumers, could be -- have a material

5  effect on their insurance purchasing decisions.

6             Judge Roth, you asked about the source

7  of the information --

8             JUDGE ROTH:  Yeah.

9             MS. JOSEPHS:  -- in the summary program

10 description.  Paragraph 22 alleges that GHI prepared

11 this information.  It was compiled into a booklet that

12 had all 11 plans' descriptions and then provided to

13 the consumers.

14             JUDGE MCKEE:  By whom?

15             MS. JOSEPHS:  The actual booklet was

16 provided by the city, but there's more.  The second

17 document that we're talking about here was available

18 on GHI's website.  So that was directly available to

19 consumers.

20             The third aspect that was --

21             JUDGE MCKEE:  Available on the union

22 site?  I assume that the New York Labor whatever it is

23 does not have its own website for this purpose.

24             MS. JOSEPHS:  There is -- I believe

25 there's a website where you can click on a link to

Page 43

1   GHI's program specific to the New York City

2   Comprehensive Benefits Plan.  I believe there is a

3   public-facing aspect of that website where these

4   materials were available and there's also --

5               JUDGE MCKEE:  Where's the link, on

6   whose website?

7               MS. JOSEPHS:  Where's the link?

8               JUDGE MCKEE:  Assuming -- I understand

9   from Mr. Gleeson's perspective it doesn't matter

10  because this is not -- this isn't an NYU situation

11  with sophisticated parties -- but assuming that we get

12  down to the level of are these folks consumers within

13  the meaning of the GBL where's the link, on whose

14  website?

15              MS. JOSEPHS:  GHI's website or

16  EmblemHealth.

17              JUDGE MCKEE:  Okay.  I click on GBL --

18  actually I should try to do this, I go on the website,

19  I click on GBL website, that takes me to the city site

20  or that takes me directly to the SPD?

21              MS. JOSEPHS:  No, Your Honor, it's a

22  GHI or EmblemHealth www address, and it has

23  information for -- prepared by GHI for these

24  consumers.

25              And what counsel emphasized in his

Page 44

```
 1   argument was the policy terms and maybe we have a
 2   claim for breach of contract.  This is not a claim
 3   about the terms of the policy.  Whatever the
 4   negotiations and whatever the contract actually
 5   provided GHI was not then permitted to either
 6   misrepresent the terms of out-of-network coverage or
 7   omit highly material information from these materials
 8   that were provided to insureds to make their coverage
 9   decisions.
10               JUDGE ROTH:  Let me ask you, other than
11   the website, GHI website, did GHI in any way
12   communicate directly with the insureds?
13               MS. JOSEPHS:  Our position is that the
14   document that they prepared that is included --
15               JUDGE ROTH:  It went through the city.
16               MS. JOSEPHS:  The document was
17   physically distributed by the city, but the
18   allegations in the complaint are that those are GHI's
19   words describing their program, and perhaps as counsel
20   suggested they're -- well our position is that
21   whatever the terms of the contract are they are
22   irrelevant, but they weren't permitted to misrepresent
23   what those terms were, and that's what they did here.
24               JUDGE FUENTES:  Do you -- I assume that
25   the plaintiff relied on the representations made by
```

Page 45

1    the insurer?

2                    MS. JOSEPHS:  Reliance is not an

3    element of the GBL or 4226 claims and the Stutman

4    versus Chemical --

5                    JUDGE FUENTES:  Misrepresentation

6    itself is sufficient?

7                    MS. JOSEPHS:  Correct, and that's

8    because the deceptive practices that the legislature

9    in New York was trying to combat were varied and they

10   weren't dependent on some common law fraud notion.  In

11   fact the courts repeatedly say in the Oswego case and

12   Gaidon, this is -- this act makes -- this act covers

13   conduct that does not rise to the level of common law

14   fraud.

15                   And just to give one example we haven't

16   had an opportunity touch on this much today, but the

17   Gaidon case out of New York, Court of Appeals two

18   times in 1999 and 2001 involve -- originally involved

19   both fraud and GBL claims in an extensive marketing

20   scheme to mislead consumers about a vanishing premium

21   illustrations, and the court there said this conduct

22   doesn't rise to fraud, you can't bring your fraud

23   claim but you can bring your GBL claim, and they

24   recognized that this covers a much broader range of

25   conduct that doesn't include falsity.  We don't -- I

Page 46

1  heard counsel say once or twice that we haven't

2  alleged that any of the materials were false or

3  fraudulent.  Well that's simply not an element here

4  and we're not required to prove that.

5            What we are required to allege, and

6  again, we're at the pleading stage, we're only talking

7  about plausibility, is that these statements have the

8  capacity to mislead or are likely to mislead a

9  reasonable consumer under the circumstances.

10           JUDGE MCKEE:  Let me ask you something,

11  I'm looking at www.EmblemHealth, is that the same

12  website as the GHI website?

13           MS. JOSEPHS:  I believe yes.  I --

14           JUDGE MCKEE:  I know you're not seeing

15  what I'm seeing --

16           MS. JOSEPHS:  I don't have it here

17  today --

18           JUDGE MCKEE:  -- is the same as a class

19  member would have seen, but --

20           MS. JOSEPHS:  So I do believe that is

21  the website.

22           JUDGE MCKEE:  Okay.

23           MS. JOSEPHS:  If you look at the

24  summary program -- summary of coverage and benefits

25  and coverage at appendix 84 even though it's the GHI

Page 47

```
 1  plan it at the top says EmblemHealth, City of New
 2  York --
 3              JUDGE MCKEE:  Okay.
 4              MS. JOSEPHS:  -- basic program.
 5              I see that my time is expired.  May I
 6  address two other --
 7              JUDGE MCKEE:  It expired days ago,
 8  Ms. Josephs.
 9       (Laughter)
10              MS. JOSEPHS:  May I address two other
11  points very briefly?
12              JUDGE MCKEE:  I knew you were going to
13  say very, very briefly.  If it's really, really brief,
14  yes.
15              MS. JOSEPHS:  It will be really brief.
16              Counsel said there's no case involving
17  a union bringing GBL claims on behalf of its members.
18  That's not accurate.  We cited the American Medical
19  Association case versus United Healthcare.
20              In that case the -- whether the
21  consumer oriented element had been satisfied was not
22  challenged by United.  What United did say was --
23              JUDGE MCKEE:  Can you give us the name
24  of the case?  What is the other one?
25              JUDGE ROTH:  Can we have the cite on
```

Page 48

1    that one?

2                   MS. JOSEPHS:  I don't have the citation

3    --

4                   JUDGE ROTH:  Okay.

5                   MS. JOSEPHS:  -- but it is in our

6    brief.

7                   JUDGE ROTH:  That's okay.  My clerks

8    now how to do.

9                   MS. JOSEPHS:  Okay.  And the defendant

10   there actually challenged the union's standing to

11   bring these claims on behalf of the members, the court

12   rejected that.  But under counsel's formulation maybe

13   the unions can bring it but the consumers can't, but

14   the practical effect is no one can bring these claims

15   and only if you have a contract claim are you able to

16   seek relief, and that's just not the law here.

17                  JUDGE MCKEE:  You lost me there.  I'm

18   not sure I follow that argument.  Say that again.

19                  MS. JOSEPHS:  In that case where the

20   defendant in that -- in the --

21                  JUDGE MCKEE:  Right.  But analogize

22   that to what Mr. Gleeson argued.

23                  MS. JOSEPHS:  Mr. Gleeson suggested

24   that perhaps the unions have a claim, that was in

25   response to questioning from you, Judge McKee, and I

1    just don't know where this drawing of lines ends under

2    this very broad statute.  If you start saying, okay,

3    well where you're represented by a union you can't

4    bring the claim but maybe the union can say you

5    misrepresented the terms of the plan or you didn't

6    give us what we you asked for.  I'm not sure what that

7    would look like, but --

8                    JUDGE MCKEE:  Right.  I think he's just

9    saying it may not -- there may be relief out there,

10   it's not a GBL claim.  I think that's what his

11   position was, but what was the other point?

12                   MS. JOSEPHS:  Sure.  The other point

13   was the Attorney General's assurance of

14   discontinuance.

15                   Mr. Gleeson said a different legal

16   standard applied under the Schneiderman versus Orbital

17   Publishing Group decision and the Spitzer versus

18   Applied Card Systems decision, the New York courts

19   made clear that the AG when prosecuting a GBL claim is

20   subject to the reasonable consumer standard.  So that

21   I just wanted to --

22                   JUDGE MCKEE:  But I remember I saw

23   somewhere where I was reading that (indiscernible)

24   lower standard was a really low standard.

25                   MS. JOSEPHS:  That came from --

Page 50

```
 1                    JUDGE MCKEE:  (Indiscernible)?
 2                    MS. JOSEPHS:  That came from that case,
 3    but if you look in the -- lower down in the paragraph
 4    what the court was addressing with the ignorant
 5    consumer standard was an action under executive law
 6    63-12.
 7                    The AOD here was brought under both
 8    that executive law and the GBL Sections 349 and 350,
 9    and for the court to have found violations of both of
10    those laws it was necessary -- not for the court --
11    for the New York Attorney General to have found that
12    those violations constituted --
13                    JUDGE MCKEE:  Was there a finding of a
14    violation here or was it just like a consent decree
15    entered into with no admission of wrong doing?
16                    MS. JOSEPHS:  There was a finding that
17    GHI did not admit or deny, but the AOD, if you look
18    at, I believe it's --
19                    JUDGE MCKEE:  The finding of
20    insufficient information.
21                    MS. JOSEPHS:  That's not the only
22    finding.  If you look at paragraph 22 of the AOD,
23    which is on appendix at 173, the header is GHI
24    misrepresents the frequency with which the schedule is
25    updated.  So there was a finding of misrepresentation.
```

Page 51

```
 1                    And additionally, on the other conduct
 2      of GHI that the Attorney General found was improper
 3      here under the GBL, those fall generally within the
 4      camp of omissions, failure to --
 5                    JUDGE MCKEE:  Judge Fuentes has one
 6      more --
 7                    JUDGE FUENTES:  Yeah, just very
 8      quickly.
 9                    JUDGE MCKEE:  -- one last question.
10                    JUDGE FUENTES:  Mr. Gleeson did say
11      that perhaps the union is the more appropriate party
12      in a case like this.
13                    Is it your position that the harm
14      itself and the misrepresentations are harms to the
15      union members or the union?
16                    MS. JOSEPHS:  To the members, and
17      that's because we're talking about GHI's
18      communications with these consumers, not about the
19      negotiations or the terms of the policy.  If you
20      extend --
21                    JUDGE ROTH:  But they're the
22      communications through the city, right?
23                    MS. JOSEPHS:  There's no allegation or
24      any information in the record that the city approved
25      those other than saying --
```

Page 52

```
 1                    JUDGE ROTH:  No, but I mean it's not
 2     like they're putting envelopes in the mail that GHI is
 3     putting envelopes in the mail and mailing them to the
 4     insureds, it's they're providing information to the
 5     city that then puts on its website concerning the
 6     programs -- insurance programs offered what the new
 7     information is.
 8                    MS. JOSEPHS:  The first document, the
 9     SPD is provided through the city, yes.  The second
10     document is provided directly by GHI on its website.
11     But in both instances that is -- the allegations in
12     the complaint are that GHI created those documents.
13                    And just to end on one point --
14                    JUDGE MCKEE:  Yeah, briefly?
15                    MS. JOSEPHS:  Yes.
16          (Laughter)
17                    MS. JOSEPHS:  If you -- if this Court
18     extends the New York University case to this situation
19     and we submit that it would --
20                    JUDGE MCKEE:  Then you put the magic
21     language when you say this case extends.  It may well
22     be that it already applies as the Court of Appeals
23     wrote it without our extending it, in this sense it's
24     touching the doctrine there.
25                    MS. JOSEPHS:  Your Honor, I hear the
```

Page 53

1   point, but respectfully I think that finding would --

2   or conclusion would result on writing Mr. Plavin out

3   of the transaction.

4            JUDGE MCKEE:  Well you're going have to

5   say that because it'll result in your losing.  I'm not

6   saying that you do lose, I just don't know.  Frankly

7   it's a really difficult case.

8            I often say that diversity contract

9   cases like these are interesting, but this is a very

10  interesting -- this is actually not really diversity

11  but it's an interesting case.  I want to thank you for

12  your --

13           MS. JOSEPHS:  Thank you.

14           JUDGE MCKEE:  -- really excellent

15  argument.  Mr. Gleeson, great seeing you again, great

16  argument.  And Ms. Josephs, I hope you come back.  I

17  hope I see you again some time.  I know I'll see you

18  again.

19      (Proceedings concluded at 11:26 a.m.)

20                  *  *  *  *  *  *

21

22

23

24

25

Page 54

1                    CERTIFICATION

2

3          I, Dawn South, certify that the foregoing is

4     a correct transcript from the official electronic

5     sound recording of the proceedings in the above-

6     entitled matter.

7

8     Dated:  March 19, 2019

9

10     *Dawn South*

    _____

11

    Dawn South

12

     Certified Electronic Transcriber

13

14

15

16

17

18

19

20

21

22

23

24

25

| & | | |
|---|---|---|
| **&** 2:5 | | |

**1**

**10019** 2:4
**10022** 2:6
**10:30** 1:7
**11** 8:8,20 26:17
  42:12
**11:26** 1:7 53:19
**1301** 2:3
**15** 1:6
**173** 50:23
**18-2490** 1:5
**1800** 1:23
**1801** 1:23
**19** 54:8
**19103** 1:23
**1983** 12:8 38:5
**1999** 45:18
**19th** 1:3
**1st** 35:9

**2**

**2** 7:24
**2001** 45:18
**2004** 35:9
**2019** 1:6 54:8
**22** 42:10 50:22
**27** 15:11 41:25
**2900** 39:8

**3**

**309** 35:5
**326** 23:18
**32nd** 2:3
**349** 6:8 11:22 50:8
**350** 6:8 11:22 50:8

**4**

**41** 17:23
**4226** 14:18 41:20
  45:3

**6**

**6,000** 39:7
**63-12** 50:6
**65** 19:2
**69** 41:21

**7**

**7** 15:11

**8**

**84** 46:25

**9**

**9** 41:22
**900,000** 8:25 26:4
**919** 2:6

**a**

**a.m.** 1:7,7 53:19
**able** 37:16 48:15
**absence** 30:18
**absolutely** 3:17
  18:15 20:3
**access** 6:5 12:7
  13:17 15:21,22
**account** 13:14
  24:9,10
**accounted** 19:2
**accounts** 24:8
**accuracy** 38:7
**accurate** 47:18
**accurately** 22:25
**act** 4:17 7:5 45:12
  45:12
**acting** 31:17 40:11
**action** 25:10 40:23
  41:4 50:5
**actionable** 14:25
  17:4
**actions** 6:11
**activity** 10:17 11:1
  11:2

**acts** 9:15
**actual** 42:15
**added** 40:23
**additional** 18:22
  18:25 19:11
**additionally** 51:1
**address** 11:14
  41:19 43:22 47:6
  47:10
**addressing** 50:4
**adequately** 17:13
**administrative**
  30:1
**admission** 50:15
**admit** 28:1 50:17
**adorable** 24:6
**advantage** 6:11
**advertisers** 6:12
**advice** 25:17
**affect** 4:18 13:1
**ag** 49:19
**agent** 5:16
**aggregating** 8:2
**ago** 47:7
**agree** 40:19
**agreed** 30:15
**agreement** 31:1
**ahead** 18:11 23:16
  34:24 35:18,18
  37:23
**aimed** 33:9
**akin** 8:1
**albert** 1:3
**aligned** 5:6
**allegation** 7:4 29:5
  29:21 51:23
**allegations** 40:3,4
  44:18 52:11
**allege** 46:5
**alleged** 15:1,23
  19:14 41:22 46:2

**allegedly** 15:13
  37:12
**alleges** 15:10
  42:10
**allowed** 16:5
**amended** 38:6
**american** 47:18
**americas** 2:3
**analogize** 48:21
**anesthesiologist**
  39:3
**announces** 35:3
**answer** 19:21,24
**anti** 6:9
**anybody** 7:19
  12:15 13:9,10
**aod** 50:7,17,22
**apart** 24:4
**apparatus** 31:1
**appeal** 1:9 3:18
  18:1
**appeals** 1:1 4:9
  10:1,15,25 21:24
  24:3 25:15 45:17
  52:22
**appearances** 2:1
**appellant** 3:7
**appellants** 2:2
**appellate** 4:9
**appellee** 20:15
**appellees** 2:5
**appendix** 27:8
  46:25 50:23
**applicability**
  39:12
**applicable** 8:16
  30:18 40:8,9 41:8
**application** 30:22
**applied** 11:13
  12:15 40:7 49:16
  49:18

**applies** 10:16 11:1
  14:14 52:22
**apply** 11:3 12:18
**applying** 4:10
**apprise** 37:25
**appropriate** 8:4
  9:4 40:13 51:11
**approved** 51:24
**april** 35:9
**argue** 10:20
**argued** 13:25 14:4
  48:22
**arguing** 10:20
**argument** 12:23
  13:24 20:23,24
  21:3,9 24:4 37:16
  44:1 48:18 53:15
  53:16
**arranged** 5:19
**asked** 41:19 42:6
  49:6
**asking** 5:17 10:11
  27:25 29:8
**aspect** 8:13 18:20
  21:8 42:20 43:3
**association** 47:19
**assume** 19:22 20:4
  21:9 42:22 44:24
**assuming** 36:4,6
  43:8,11
**assurance** 16:1
  38:9,22 39:11,21
  41:2 49:13
**atlantic** 1:22
**attention** 21:23
  23:6,18 24:2,21
  27:6 35:1
**attorney** 15:25
  16:3 38:1,1,3,6,21
  38:23,25 39:6,6,13
  39:24 40:9 41:8

49:13 50:11 51:2
**auction** 12:21
**authored** 23:20
**availability** 16:23
  38:13,14
**available** 4:2 8:12
  12:21 17:11 22:23
  36:9 42:17,18,21
  43:4
**avenue** 2:3,6
**avenues** 16:2

## b

**b** 41:22
**back** 19:12,13,18
  20:2,5 24:7 53:16
**background** 6:4
**bad** 11:7
**bank** 13:10 24:8
**bargaining** 21:14
  21:16 25:19 26:2
  30:19,25 31:7,9
  33:25 36:12,12
  37:19
**based** 4:4 23:20
  37:14
**basic** 47:4
**basis** 11:8 16:9
  38:11
**bearing** 13:14
**beef** 34:7,11,16
**beginning** 8:15
**behalf** 3:7 30:15
  31:17 37:21 47:17
  48:11
**believe** 13:22
  42:24 43:2 46:13
  46:20 50:18
**beneficiary** 25:12
  32:4
**benefit** 7:4 25:8
  35:8

**benefits** 7:2,8 9:20
  18:23 23:21 43:2
  46:24
**best** 3:19,21
**better** 9:6
**beware** 6:12
**billion** 7:25
**bluecross** 29:24
**blueshield** 29:24
**board** 5:19 13:18
**bolts** 3:16
**booklet** 42:11,15
**bottle** 10:9
**branson** 1:3
**breach** 31:25 32:5
  37:11,14 44:2
**brief** 20:22 47:13
  47:15 48:6
**briefly** 18:11,11
  18:11 19:25 40:17
  47:11,13 52:14
**bring** 32:4 36:16
  45:22,23 48:11,13
  48:14 49:4
**bringing** 47:17
**broad** 49:2
**broader** 45:24
**broadly** 10:8
**brochure** 32:19
**bronx** 7:19
**brooklyn** 34:8
  39:17
**brought** 16:15
  34:7 36:1 50:7
**bureau** 39:6
**business** 9:16 33:5
**buyer** 6:12

## c

**c** 3:1
**call** 13:5

**called** 9:10 15:22
**camp** 51:4
**capacity** 46:8
**card** 13:12 49:18
**cards** 24:10
**care** 34:12
**carrier** 34:15
**case** 3:9,12,19,21
  3:24,25 4:4,15
  5:11,13 6:24,25
  7:7 8:4,6,17 10:9
  10:12,15,21 11:9
  12:11,12 13:19,23
  14:2 21:5,8 24:5,6
  24:17,17,25 25:22
  26:13 31:4,21
  34:19 35:12,13
  36:2 39:25 40:9
  40:20,20,21 41:11
  41:12 45:11,17
  47:16,19,20,24
  48:19 50:2 51:12
  52:18,21 53:7,11
**cases** 3:22 5:7 6:2
  12:9 13:1 21:10
  21:15,24 24:3
  30:22 31:4,5 34:7
  53:9
**caveat** 6:9
**certain** 13:18
  14:23 19:6 22:23
  36:21
**certainly** 10:11
**certification** 54:1
**certified** 54:12
**certify** 54:3
**cetera** 14:10,11
**chair** 19:19
**challenged** 47:22
  48:10

chance 18:10
change 27:9 35:4
changes 15:24
  27:6 35:9
check 16:13
chemical 45:4
choice 8:13 26:17
  26:20,21
choose 5:1 8:9
  17:16
chose 17:14
circuit 1:1,11
  12:19
circumstance 16:8
  16:10,11
circumstances
  14:23 30:25 46:9
citation 48:2
cite 35:2 47:25
cited 13:19 47:18
cites 27:8
city 7:20 8:18,20
  9:3 12:5 22:2,17
  23:1,6,15,20 25:2
  25:7 26:19 28:2,5
  28:8,8,10,21 29:2
  29:2,4,13,15,19
  31:12,16 32:3,13
  32:17,23,24 35:5,6
  42:16 43:1,19
  44:15,17 47:1
  51:22,24 52:5,9
claim 4:13 7:8,10
  11:6 14:10 16:9
  16:16 17:20 25:9
  31:25 32:4 34:15
  34:20 35:25 36:22
  36:25,25 37:12,14
  37:17,17 38:18,21
  44:2,2 45:23,23
  48:15,24 49:4,10

49:19
claiming 6:20
claims 3:14 4:5,16
  14:25 36:16 45:3
  45:19 47:17 48:11
  48:14
class 6:20 10:6
  19:4 25:10 41:4
  46:18
clear 23:4 49:19
clearly 22:5
clerk 8:16
clerks 48:7
click 42:25 43:17
  43:19
client 22:4 35:11
closed 33:8
coded 13:12
collective 21:14
  30:25 31:7
combat 45:9
come 5:16 19:12
  19:13,18 20:2,4
  29:1 53:16
comes 18:6
comments 20:18
commerce 9:16
commercial 7:2
committee 35:8
common 7:5 16:7
  27:7 45:10,13
communicate
  29:11,12 44:12
communicating
  8:21
communication
  8:25 28:2
communications
  22:19 51:18,22
companies 8:12,20
  10:18 26:18 32:13

40:25
company 5:4 7:9
  8:19,19 9:1,4 11:6
  11:11 13:24 22:20
  25:19 30:20 35:25
  36:13 37:19 39:5
compelled 18:8
compiled 42:11
complain 26:16
complainant 31:6
complained 14:5
  20:18
complaining 11:10
  27:19
complains 22:24
  23:5
complaint 15:10
  17:23 19:13 26:7
  26:20 31:2,23
  37:8 38:10 41:20
  44:18 52:12
complaints 27:24
  39:8
completely 24:4
comply 39:19
comprehensive
  17:16 43:2
concealment 15:3
  15:6 42:1
concept 30:7
concern 22:16
concerned 9:1
concerning 52:5
concluded 40:10
  53:19
concludes 30:14
conclusion 53:2
conclusory 40:3
condolences 34:10
conduct 3:10 4:6
  5:8 6:3 9:16 12:3

12:24 13:1,7 14:1
  14:4,8,25 17:8
  21:11 22:18 24:12
  25:23 26:13,15
  33:9 35:14 36:7
  45:13,21,25 51:1
consent 50:14
consider 12:10
considered 26:5
  26:10
consistent 10:12
constituted 50:12
construction 10:3
consumer 6:10
  12:24 14:13,14
  21:11 22:5,18
  24:11 25:25 26:16
  35:13 37:17,18
  40:11 41:3 46:9
  47:21 49:20 50:5
consumers 3:11
  3:13 6:6 8:5 10:6
  11:5,13,20,21 15:9
  17:7,11,12 18:24
  26:5,6,10 32:23,24
  42:4,13,19 43:12
  43:24 45:20 48:13
  51:18
consuming 6:13
  13:16 25:18,24
  30:24 31:10
contain 27:18
contained 11:23
context 4:11 33:6
  40:7
continental 11:6
contract 5:16,18
  6:4,8,18 8:17 9:2
  22:1,17,22 24:18
  24:24 25:2,12,22
  31:8 32:2 33:3,16

44:2,4,21 48:15
53:8
**contracts** 5:12,14
5:25 22:23 30:23
33:19
**contractual** 4:19
**convincing** 21:2
**cooperate** 40:18
40:25
**core** 33:12
**correct** 4:22 30:3
45:7 54:4
**correctly** 21:12
**cost** 7:23,24
**costs** 27:2
**counsel** 5:2 43:25
44:19 46:1 47:16
**counsel's** 48:12
**course** 30:12
32:14 39:9
**court** 1:1 3:6 4:9
10:1,15,25 17:19
17:25 20:9,14
21:24,25 24:3,11
24:16 25:14,21,22
27:10 31:3 34:4
37:25 40:5 45:17
45:21 48:11 50:4
50:9,10 52:17,22
**court's** 21:23
24:21 27:6
**courtroom** 1:3
**courts** 4:8,10
13:15 17:5 24:2
30:2 45:11 49:18
**coverage** 11:7
18:23 19:1 22:24
27:9 28:20 31:25
32:5,14,16 34:15
34:17 37:11,13,14
38:16 44:6,8

46:24,25
**covered** 26:25
**covers** 19:6 45:12
45:24
**crazy** 18:6
**create** 32:17
**created** 52:12
**creation** 16:4
**credulous** 39:15
**crime** 7:3
**customary** 17:3
**customer** 24:13

**d**

**d** 3:1
**damaged** 4:21
**damages** 14:23
**date** 1:6
**dated** 54:8
**dawn** 54:3,11
**days** 47:7
**deal** 10:4 38:11
**dealing** 37:18
**dear** 35:4,5
**debevoise** 2:5
**deception** 38:4
**deceptions** 14:21
24:14
**deceptive** 3:9 5:8
9:15 13:7 14:4,7
15:2,5 36:6 45:8
**decide** 19:9
**decided** 9:24
10:21 24:3
**decides** 24:16
**deciding** 21:12
**decision** 49:17,18
**decisions** 42:5
44:9
**declared** 9:18
**decree** 50:14

**defendant** 8:24
35:11 48:9,20
**defendant's** 12:23
17:8 41:24
**defense** 5:1
**definition** 11:23
33:6,8
**deliberately** 41:10
**demonstrates**
22:15
**denial** 7:2,8
**denied** 11:6
**deny** 50:17
**dependent** 45:10
**describing** 44:19
**description** 23:19
23:25 28:23,25
29:15,19 42:10
**descriptions** 24:9
42:12
**detriment** 36:22
**difference** 13:25
**different** 5:21 6:22
7:22 17:13 24:23
26:18 49:15
**differently** 10:21
**differs** 11:9
**difficult** 53:7
**difficulty** 21:10
**direct** 8:24 24:24
25:2
**directed** 4:1 8:10
14:1,5
**directly** 8:22
22:20 23:1 25:10
27:4 28:3,20 29:1
29:12 32:24 35:2
37:18 42:18 43:20
44:12 52:10
**disagree** 10:22
39:12,16

**discontinuance**
16:1 38:10,22
39:12,21 41:3
49:14
**discrete** 11:21
13:5
**dismiss** 40:1,14
**disparate** 25:19
26:2 30:19 31:9
33:24 37:19
**dispositive** 35:10
**dispute** 4:20 7:9
7:11 25:23 38:7
**disputing** 7:2
**disseminating**
14:9
**distinctive** 21:8
**distinguished** 4:19
**distinguishes**
33:11
**distributed** 44:17
**district** 17:19,25
**diversity** 53:8,10
**division** 4:10
**doctor** 5:5
**doctors** 5:15 7:13
**doctrine** 52:24
**document** 24:14
24:22 42:17 44:14
44:16 52:8,10
**documents** 24:13
52:12
**doing** 50:15
**dollars** 8:10
**draft** 30:14
**drafted** 29:5,9,18
29:22
**drafts** 30:16
**drawing** 49:1
**drawn** 40:5

## e

e  3:1,1
earlier  13:19 35:1
easily  19:5
easy  21:12,13
  35:14
economic  10:16
  11:1,2
effect  42:5 48:14
effects  3:8
effective  35:9
either  44:5
elacqua  3:23 4:15
  5:13 7:13 10:12
  13:19 20:23 21:4
  31:4
electronic  54:4,12
element  4:13
  14:22,24 17:23
  45:3 46:3 47:21
eligible  11:24
emblemhealth
  13:22 43:16,22
  47:1
emphasized  43:25
employee  23:21
  35:5
employees  8:22
  12:5 22:3 26:19
  29:16 32:3,15
employer  9:20,20
  33:20 34:13,17,22
employers  26:15
emptor  6:9
ends  49:1
enforces  39:14
enhanced  18:22
enrichment  3:14
entered  50:15
entirely  19:1
  40:13

entities  13:10
entitled  54:6
entity  6:17,19,19
  10:5
envelopes  52:2,3
equally  17:3 20:13
esq  2:2,5
esr  2:7
establish  5:24 12:4
et  14:10,10
everybody  24:12
evils  33:24
exact  13:24
exactly  9:13 17:9
example  5:6 45:15
excellent  20:24
  53:14
excepting  6:3
exceptions  10:17
excluded  19:1
excuse  22:16 23:9
  37:9
executive  50:5,8
expenses  19:3,7
expired  18:4 47:5
  47:7
extend  51:20
extending  52:23
extends  52:18,21
extensive  45:19
extent  40:3
extra  22:23

## f

facing  43:3
fact  17:1 22:1 30:9
  41:23 45:11
factual  40:3,4
failed  19:8
failure  51:4
fairly  18:9

faith  11:8
fall  51:3
falls  22:5
false  14:10 46:2
falsity  45:25
families  8:4
family  19:11
far  16:22
favor  42:2
federal  4:10
fee  12:7 15:3,8
  16:25 17:9 42:2
feel  18:7,9
fellow  32:3
felt  20:16
field  21:16
figure  17:13
file  35:24
financial  19:11
find  38:3
finding  50:13,16
  50:19,22,25 53:1
finds  24:11
finish  25:13 30:8
  40:15
first  12:11 14:21
  23:3 24:5 28:8
  41:18 52:8
fits  10:5 11:22
five  33:10
floor  1:3 2:3
focus  3:15
focused  7:23
focusing  37:14
folks  4:14 43:12
follow  48:18
following  35:8
foregoing  54:3
former  32:3
forms  25:17

formulation  48:12
found  38:25 50:9
  50:11 51:2
frankly  53:6
fraud  16:9,16 32:1
  38:3 45:10,14,19
  45:22,22
fraudulent  6:11
  6:11 35:25 46:3
freedom  17:16
frequency  16:25
  50:24
fuentes  1:10 14:7
  14:16,19 15:5
  19:12 25:4 31:19
  35:19,22 36:4
  38:17 39:23 41:18
  44:24 45:5 51:5,7
  51:10
full  6:10
furnishing  9:17
future  17:14

## g

g  3:1
gaidon  12:25
  45:12,17
gather  26:18
gbl  3:13,15 4:4,16
  5:24 14:18,21
  17:4 21:17 26:12
  30:11,18,23 31:5
  32:8 34:6,20
  35:12,21 37:17
  38:1 39:13 40:24
  41:7 43:13,17,19
  45:3,19,23 47:17
  49:10,19 50:8
  51:3
general  10:7 11:14
  11:24 12:2,10,14
  12:18,22 16:3

25:20 33:5,9 38:1
38:2,3,6,21,23,25
39:6,13,24 40:10
50:11 51:2
**general's** 16:1
39:7 41:9 49:13
**generally** 6:23
15:2 26:1 41:21
41:22 51:3
**generic** 24:9,19
**getting** 18:10
**ghi** 8:5,7,9,11
17:24 18:23 22:4
22:17,22 23:1,5,24
25:8 26:22 27:4
28:3,3,7,16,21
29:2,5,19,22 32:12
32:15 42:10 43:22
43:23 44:5,11,11
46:12,25 50:17,23
51:2 52:2,10,12
**ghi's** 3:9 13:23
15:9,24 16:4
32:25 42:18 43:1
43:15 44:18 51:17
**give** 32:7 45:15
47:23 49:6
**given** 6:5 12:7
**gleeson** 2:5 20:6,8
20:9,11,13,15,21
20:25 21:6,22
23:3,9,12,17 25:1
25:7,11 26:6,11
27:1,5,16,20,22
28:5,10,13,17,22
29:4,10,14,21 30:3
30:6,8 31:16,23
32:8,11 33:2,14,18
33:24 34:4,11,25
35:17,23 36:3,8,14
36:17,24 37:5,7,9

37:24 38:20 39:19
40:2,18 41:15
48:22,23 49:15
51:10 53:15
**gleeson's** 43:9
**go** 15:13,15,18
17:14 18:11 23:16
24:8 28:2,3,21
29:2 32:19,23
34:24 35:18,18
37:23 39:2,8
43:18
**godfrey** 2:2 3:6
**goes** 25:21 28:5,7
**going** 13:11,11
18:6,8 23:12
24:21 30:13 47:12
53:4
**good** 3:5 4:1 20:6
20:7 34:12
**goods** 13:18
**grant** 7:13
**grape** 12:16,17
**gravamen** 38:8
**great** 53:15,15
**greenberg** 12:11
**group** 1:7 3:3 7:12
7:17 11:13,16,20
11:21,22,25 13:5
19:14 35:19 37:3
49:17

### h

**halley** 2:2 3:6
**hand** 22:4
**handed** 22:12
24:12,13
**handled** 11:11
**happened** 13:9
29:7
**happy** 19:21,24

**harm** 4:11 7:16
11:5 12:3 17:19
51:13
**harmed** 4:15 7:16
**harms** 51:14
**header** 50:23
**headquarters** 15:9
**health** 1:7 3:3
13:23 19:14 26:10
35:20 37:3 39:6
**healthcare** 47:19
**hear** 52:25
**heard** 27:24 46:1
**heart** 21:16 30:17
**heightened** 16:17
**held** 4:5
**help** 11:17,21
20:23
**high** 12:20
**higher** 41:9
**highly** 17:7 18:21
19:9 44:7
**hip** 11:11
**honor** 3:17 8:2
10:22 13:4 15:7
15:21 43:21 52:25
**honorable** 1:10,10
1:10
**hope** 53:16,17
**hospital** 39:3
**huh** 4:24
**hundreds** 3:10
12:5 13:6
**hypothetical**
32:10

### i

**ignorant** 39:15
50:4
**illustrations** 45:21
**impact** 6:23

**important** 24:1
37:20
**improper** 11:8
51:2
**inaccurate** 38:19
**inadvertent** 14:12
14:25
**inapplicable** 30:11
**incentives** 5:4
40:24
**include** 45:25
**included** 44:14
**including** 26:1
**inconsistent** 10:10
**incororated** 1:7
**incorporated** 3:3
**incorrect** 34:14
37:13
**increased** 18:22
**incur** 17:14
**indiscernible**
13:11 20:12 22:12
49:23 50:1
**individual** 5:15
8:3
**individuals** 13:5
**induce** 22:21
32:24 34:3
**inducement** 32:1
**inference** 42:2
**inferences** 40:4
**inform** 16:24
**information** 14:9
15:21 16:12 17:6
19:4,8 23:4 26:23
27:3,23,25 28:16
28:25 29:1 34:14
38:12,14,19,25
39:10 40:19 41:1
42:3,7,11 43:23
44:7 50:20 51:24

52:4,7
**informed** 4:25
**injury** 17:24
**insane** 15:16
**inspect** 15:10,13
**instance** 26:24
28:19
**instances** 52:11
**insufficiency**
38:18
**insufficient** 38:12
38:14,24 39:10
50:20
**insufficiently**
38:13
**insurance** 3:25 4:2
4:4,11 5:4,16 7:3
7:9 8:12,19,20,23
9:1,3 10:17 11:6
11:11 14:2,3,6,16
19:15 22:1,20
23:23 24:18 25:12
26:10,18 29:24
30:4,11,20,23
31:25 32:14 33:3
33:7 34:15 35:25
36:13 42:5 52:6
**insured** 7:1,10 8:8
22:20 24:21 30:20
**insureds** 4:7,12,23
5:3 8:3,7,10,25
13:2 15:25 16:25
19:9 23:2 28:4,6
28:21 29:3,12,13
44:8,12 52:4
**insurer** 5:5,20
14:9,13 24:25
30:13 34:21 36:23
37:1 45:1
**insurers** 3:24
30:23

**intend** 9:22
**intended** 41:10
**interaction** 8:6
**interest** 6:19 13:14
24:7,15
**interesting** 53:9
53:10,11
**intermediaries**
26:14
**intermediary**
21:15 35:11
**interrupt** 23:13
**interrupting** 37:10
**investigations**
41:9
**invite** 21:23 23:6
23:17 24:2,21
27:6 35:1
**involve** 14:25
45:18
**involved** 3:24 7:8
13:23 24:17 33:20
34:1 45:18
**involvement** 12:22
**involves** 25:17
31:5,5
**involving** 25:23
31:5 34:20 47:16
**irrelevant** 44:22
**issue** 3:18 5:19
**issuing** 37:3
**it'll** 53:5

**j**

**jane** 1:10
**jockeying** 8:9
**john** 2:5 20:15
**joint** 27:8
**joseph** 21:19
**josephs** 2:2 3:5,6
3:17,21 4:22,25
6:1,25 8:2 9:7,13

10:14,22 11:4,19
12:1,19 13:15
14:15,17,20 15:7
15:20 16:10,15,19
16:21 17:22 18:3
18:12,15,18 19:21
19:24 20:3,23
22:10 37:16 41:17
41:18 42:9,15,24
43:7,15,21 44:13
44:16 45:2,7
46:13,16,20,23
47:4,8,10,15 48:2
48:5,9,19,23 49:12
49:25 50:2,16,21
51:16,23 52:8,15
52:17,25 53:13,16
**judge** 3:2,12,19
4:14,24 5:9 6:7
7:11 8:14 9:6,8,10
9:14,23 10:10,19
10:24 11:16,20
12:13 13:8,21
14:7,16,19 15:5,14
15:18 16:8,11,18
16:20 17:18 18:2
18:5,14,17,18
19:12,16,22 20:1,4
20:7,10,12,20,22
21:1,7,18 22:7,8,9
22:11,15 23:3,7,10
23:11,15 24:10,23
25:3,4,5,9,14 26:3
26:7,9,17 27:2,11
27:13,15,17,21,23
28:7,12,15,18,24
29:8,11,17,18 30:1
30:4,7 31:13,19
32:7,10,12 33:13
33:15,22 34:1,10
34:24 35:16,18,19

35:21,22,24 36:4,6
36:11,15,20 37:2,6
37:8,15,23 38:17
38:22 39:17,23
40:6,6,17,20 41:14
41:17,18 42:6,8,14
42:21 43:5,8,17
44:10,15,24 45:5
46:10,14,18,22
47:3,7,12,23,25
48:4,7,17,21,25
49:8,22 50:1,13,19
51:5,5,7,9,10,21
52:1,14,20 53:4,14
**judges** 1:11 30:4
**judgment** 35:20
**judith** 40:20
**juice** 12:17,17
**julio** 1:10

**k**

**keep** 18:8 40:24
**key** 25:25
**kind** 10:9 24:6
**knew** 47:12
**know** 3:14 5:10,25
6:1,2 7:24 11:17
16:5 19:16,18
28:9 29:20 39:4
41:21 46:14 49:1
53:6,17
**knowingly** 19:14
**knowledge** 14:22
14:22,24 15:1
41:20,22 42:3
**koch** 12:11

**l**

**labor** 5:19 23:21
31:17 35:7,8
42:22

**language** 6:3 9:14
  9:23,25 12:25
  13:4 29:6,9 52:21
**large** 4:1,18 6:14
  24:15 25:18,24
**laughter** 9:9,12
  15:17 18:16 19:20
  22:14 23:14 31:15
  34:9 39:18 47:9
  52:16
**law** 4:10 8:16
  14:13,14,16 19:15
  26:5,7,11 33:5
  40:11 41:11 45:10
  45:13 48:16 50:5
  50:8
**laws** 26:1 50:10
**lawsuit** 23:20
**legal** 1:22 49:15
**legislature** 9:21
  40:22 45:8
**letter** 27:7
**letters** 27:11,17
**letting** 41:15
**level** 4:9,10 43:12
  45:13
**levels** 21:15
**licensed** 4:3
**lies** 21:16
**light** 10:11 18:6
**limitations** 37:16
**limited** 11:23
**limits** 38:15
**lincoln** 15:12,15
  16:14
**line** 22:6
**lines** 49:1
**link** 42:25 43:5,7
  43:13
**lion's** 8:21 32:15

**litigation** 40:22
**living** 7:19
**lobbed** 22:11
**look** 7:14 9:14
  10:4 16:5 21:20
  46:23 49:7 50:3
  50:17,22
**looked** 10:3 40:6,7
**looking** 5:11 6:24
  46:11
**looks** 10:25
**lose** 21:5,7 53:6
**losing** 53:5
**lost** 48:17
**low** 49:24
**lower** 39:14 41:5,8
  49:24 50:3

**m**

**m** 1:10
**magic** 52:20
**mail** 52:2,3
**mailing** 52:3
**malpractice** 3:24
  4:2 5:2 13:20
**manhattan** 7:19
**march** 1:6 54:8
**mariani** 40:6,6
**maris** 1:3
**market** 1:23
**marketed** 17:15
**marketing** 45:19
**material** 17:7 19:9
  40:12 42:4 44:7
**materials** 12:6
  15:8 22:25 43:4
  44:7 46:2
**matter** 3:2 33:10
  36:10 40:10 43:9
  54:6
**matters** 29:6

**mckee** 1:10 3:2,12
  3:19 4:14,24 5:9
  6:7 7:11 9:6,8,10
  9:23 10:19,24
  11:16,20 12:13
  13:8,22 15:14,18
  16:8,11,18,20
  17:18 18:2,5,14,17
  18:19 19:16,22
  20:1,4,7,10,12,20
  20:22 21:1,18
  22:8,11 23:7,11,15
  24:10,23 25:3,5,9
  27:13 29:18 31:13
  34:10,24 35:16,18
  35:21,24 36:6,11
  36:15,20 37:2,6,8
  37:15,23 39:17
  40:17 41:14,17
  42:14,21 43:5,8,17
  46:10,14,18,22
  47:3,7,12,23 48:17
  48:21,25 49:8,22
  50:1,13,19 51:5,9
  52:14,20 53:4,14
**mean** 3:13 7:7
  9:14 10:1,8 21:5
  35:20 52:1
**meaning** 43:13
**means** 21:6 33:18
**meant** 35:1
**medical** 3:24 4:2,3
  13:19 47:18
**member** 7:20
  11:24 12:14 16:4
  31:21 35:3 36:20
  36:22,24 37:6
  46:19
**member's** 34:20
**members** 6:21
  7:12 13:16 14:1,6

16:5 19:3 22:21
  25:4,6,8 26:4 27:4
  30:15,24 32:20
  33:8,16,17 34:7
  47:17 48:11 51:15
  51:16
**mentioned** 13:22
  37:15 39:23
**message** 35:2
**mid** 1:22
**millennium** 5:13
  7:14 13:23 21:4
**million** 33:11
**mind** 40:22,24
**minutes** 5:23
**misconduct** 36:1
**mislead** 13:13
  45:20 46:8,8
**misleading** 3:10
  14:10 18:21 20:17
  34:16
**misled** 40:12
**misrepresent** 44:6
  44:22
**misrepresentation**
  16:20,22,24 27:24
  32:22 34:3 36:16
  45:5 50:25
**misrepresentatio...**
  20:17 26:21 27:18
  28:1 36:5,7,21
  38:4 51:14
**misrepresented**
  26:23 49:5
**misrepresenting**
  15:3
**misrepresents**
  32:20 50:24
**misses** 34:16
**missing** 6:24

**moment** 27:9
37:22
**money** 12:14
19:10
**months** 24:3,16
**morning** 3:5 20:6
20:7
**motion** 39:25
40:14
**municipal** 23:22
31:11 35:8

**n**

**n** 3:1
**name** 47:23
**narrow** 7:17
**nature** 12:20
**near** 15:15 16:13
**necessary** 50:10
**needs** 24:20
**negotiated** 5:12,14
5:25 6:16 8:17
22:1,17 23:22,23
24:18 28:11 33:2
33:16,19 34:18,21
**negotiates** 29:23
30:2 32:16
**negotiating** 6:18
30:10 31:7 33:7
**negotiation** 9:2
34:2
**negotiations** 30:9
30:14 35:6 44:4
51:19
**negotiators** 37:20
**network** 3:11
17:15 18:23 19:2
19:3,6,7 27:1,2
28:20 38:16 39:1
39:3 44:6
**never** 34:19 35:24

**new** 2:4,6 4:8 5:19
7:19 8:18,20 10:1
10:14,25 14:13,13
14:21 15:25 17:5
19:15 21:24 23:21
24:3 26:1 28:2
31:12,16 32:13
33:5 35:5,6 39:7
40:21 41:10,11
42:22 43:1 45:9
45:17 47:1 49:18
50:11 52:6,18
**night** 30:16
**non** 40:2
**normally** 9:10
**notion** 45:10
**number** 7:22 13:6
22:21
**numbers** 7:21
**numerous** 4:12
11:5
**nuts** 3:15
**ny** 2:4,6
**nyu** 6:16,25 7:22
7:23 8:1,15 9:24
10:12,21 11:1
24:17,24 25:15
43:10

**o**

**o** 3:1
**obtain** 23:23
**obviously** 32:2,3
**occupied** 25:19
**occur** 5:8
**occurred** 5:12
**offered** 5:3 7:18
10:7 24:15 32:20
33:1 52:6
**offering** 8:20
**office** 15:12 16:13
23:21 30:1 31:17

39:7
**official** 54:4
**okay** 14:20 18:2
26:3 27:11 28:7
28:12,18,24 29:8
29:17 32:11 33:22
43:17 46:22 47:3
48:4,7,9 49:2
**old** 12:17
**omissions** 17:3
51:4
**omit** 44:7
**omitted** 16:24
**once** 40:23 46:1
**ones** 21:12 23:24
**online** 15:19
**operating** 33:12
**operator** 2:7
**opinion** 4:16
**opportunity** 45:16
**opposed** 25:20
32:25
**orbital** 49:16
**order** 32:18
**ordered** 16:3
**oriented** 12:24
21:11 22:5,18
24:12 26:16 35:14
47:21
**originally** 45:18
**oswego** 3:20,21
12:25 13:8 24:5
25:16 33:12 40:20
40:21 45:11
**outrageous** 12:16
**outset** 20:14,15
37:15
**overall** 6:23
**overstay** 41:16

**p**

**p** 3:1
**pa** 1:23
**page** 23:18 35:4
**paid** 7:25 8:11
12:16 17:21
**paragraph** 15:11
17:23 41:21,25
42:10 50:3,22
**parent** 13:23
**part** 39:11
**particular** 7:10
10:5 12:4
**particularly** 17:6
**parties** 24:19
25:18,23 26:14
30:10 33:7 36:12
43:11
**party** 6:5 7:1
25:12 31:20,24
32:4 36:2,16
51:11
**passed** 28:19
29:13
**passes** 30:16
**patient** 19:1,7
26:24,24
**pause** 3:4
**payment** 17:2
**pays** 22:2
**people** 6:20 14:5
24:6,8 32:18
33:10,11,17
**percent** 19:3
**period** 19:4
**permitted** 44:5,22
**person** 15:9 40:11
**perspective** 43:9
**persuaded** 8:16
**persuasively**
21:20

**philadelphia** 1:23 31:14
**physically** 44:17
**physicians** 3:23 4:20
**pick** 8:23 22:22
**place** 21:24
**plaintiff** 3:7 12:4 35:12 36:8,10 44:25
**plaintiff's** 38:18 38:20
**plaintiffs** 6:21 7:12 27:19
**plan** 8:13 14:6 17:15 18:20 19:10 29:19 32:21 33:8 38:14 43:2 47:1 49:5
**plan's** 17:2
**plans** 8:8,12 42:12
**plausibility** 46:7
**plavin** 1:5 3:2,8 11:10 17:18 20:18 22:3,24 23:5 25:10 27:19 31:18 31:24 35:3 37:18 53:2
**playing** 21:16
**pleading** 46:6
**pleadings** 39:24
**please** 3:6 20:9 25:14 37:24 40:24
**pleasure** 20:8,11
**pled** 7:4 40:2 41:20,21
**plimpton** 2:5
**point** 12:9 13:20 13:21 18:7,13 28:14 49:11,12 52:13 53:1

**points** 47:11
**policy** 7:3,18,18 7:21 26:22 35:4 44:1,3 51:19
**portal** 16:4
**position** 8:9 20:16 44:13,20 49:11 51:13
**positions** 5:5 25:19
**possession** 41:24
**potential** 4:18 11:5 16:6
**potentially** 4:6 7:16 13:1
**power** 21:16 26:2 30:19 31:9 33:25 36:12 37:19
**ppo** 17:2,16
**practical** 36:10 48:14
**practice** 4:17,21
**practices** 9:15 15:24 45:8
**precisely** 24:22 28:13 41:23
**preclude** 12:22
**predicated** 4:17
**premium** 7:23,25 45:20
**premiums** 8:3,11
**prepared** 42:10 43:23 44:14
**prepares** 32:19
**presented** 34:2
**presumed** 39:25
**pretty** 31:12
**price** 12:16
**prices** 12:20
**primarily** 16:22

**primary** 3:18 16:2
**principal** 33:12
**private** 4:19 25:22 40:23
**problem** 11:17
**problematic** 39:1
**procedure** 16:7 39:2
**procedures** 16:7
**proceeding** 38:9
**proceedings** 5:2 53:19 54:5
**process** 30:12
**produced** 39:20
**professionals** 4:3
**program** 23:19,22 23:25 28:23,25 29:15 32:17,25 42:9 43:1 44:19 46:24 47:4
**programs** 33:1 52:6,6
**promised** 37:13
**proof** 35:20
**proper** 30:22 31:20,24 36:2,16
**properly** 17:21
**proprietary** 17:10
**prosecuting** 49:19
**prospective** 16:3
**protect** 6:13 9:21
**protected** 10:5
**protection** 26:1 37:17
**protects** 39:14
**prove** 14:22 16:16 46:4
**proves** 13:20
**provide** 18:22 19:10 26:22 27:8 32:14 39:9 40:19

41:1
**provided** 15:22 18:25 26:19 29:15 42:12,16 44:5,8 52:9,10
**provider** 17:17
**providers** 39:2
**providing** 38:12 38:13 52:4
**public** 4:1,18 6:13 6:23 10:7 11:15 11:24 12:2,10,14 12:18,22 13:17 24:15 25:18,20,24 30:24 31:10 33:9 43:3
**publishing** 49:17
**purchasing** 42:5
**purpose** 42:23
**purposeful** 42:1
**purposes** 26:12 39:25
**pursuant** 31:7
**put** 19:5 52:20
**puts** 10:11 40:16 52:5
**putting** 52:2,3

**q**

**question** 4:5 5:11 8:14 22:19 41:19 41:23 51:9
**questioning** 48:25
**quickly** 51:8
**quite** 7:14
**quote** 25:15
**quoting** 4:16

**r**

**r** 1:10 3:1
**raised** 17:25

range  45:24
rates  17:3,10
read  5:11
reading  4:15
  49:23
really  3:12 4:19
  21:2,2 34:18
  35:20 47:13,13,15
  49:24 53:7,10,14
reason  5:17 21:13
  25:25
reasonable  40:11
  40:11 46:9 49:20
reasonably  40:12
rebuttal  19:17
receive  20:24 24:9
received  9:19 12:6
reciprocal  3:23
recognized  4:11
  13:16 45:24
record  5:10 23:18
  29:5 51:24
recording  54:5
recourse  36:9
rectify  26:2 30:19
red  18:6
reference  34:23
referenced  24:11
referring  14:17
regarding  26:8
regardless  14:1
region  1:22
regular  38:11
regulator  38:10
  39:20 40:19
regulators  38:2
  41:1
reimbursement
  17:10 38:15
reimbursements
  3:11

reject  12:10
rejected  12:23
  48:12
relations  23:21
  31:17 35:7
relationship  17:1
reliance  45:2
relied  36:21 44:25
relief  16:3 21:25
  48:16 49:9
relies  37:6
rely  40:4
remedies  32:6
  33:4,4
remedy  32:9
remember  49:22
renders  30:11
repeated  5:7
repeatedly  4:5
  13:16 45:11
replacement  11:11
represent  16:6
  22:3
representation
  16:18 28:22
representations
  23:24 44:25
represented  22:25
  31:6 35:7 49:3
require  21:7
required  16:16
  21:21 46:4,5
requirement  12:2
  12:2,10
resolved  39:22
resolves  39:8
respect  21:10 26:7
  26:9 34:6 35:13
respectfully  31:3
  41:7 53:1

response  27:16
  48:25
restrict  41:11
restricted  41:12
result  12:24 15:25
  35:6 53:2,5
resulted  38:9
results  41:3
retiree  35:5
retirees  12:6 22:4
reveal  14:3 17:7
  19:8
revealed  42:4
rider  18:22 19:6
  28:19
right  3:13 4:20 5:1
  9:13 10:14 24:24
  27:21 30:5,6,14
  37:5,15 40:23
  41:6 48:21 49:8
  51:22
rise  45:13,22
roth  1:10 8:14
  9:14 10:11 22:7,9
  22:15 26:3,9,17
  27:2,11,15,17,21
  27:23 28:7,12,15
  28:18,24 29:8,11
  29:17 30:1,4,7
  32:7,10,12 33:13
  33:15,22 34:1
  42:6,8 44:10,15
  47:25 48:4,7
  51:21 52:1
rule  41:22

| s |
|---|
s  3:1
sake  21:9
sale  18:21
satisfied  47:21

satisfy  4:12
save  19:17
saving  24:9
savings  24:8
saw  49:22
saying  19:18 25:6
  33:22 36:1,3 49:2
  49:9 51:25 53:6
says  11:1 25:15
  38:22 47:1
schedule  12:7 15:3
  15:4,8,10,13 16:23
  16:25 17:9,10
  38:5 42:2 50:24
scheme  17:2 45:20
schneiderman
  49:16
second  12:19 23:9
  42:16 52:9
section  14:18
sections  50:8
security  19:11
see  18:3 20:8 31:3
  34:6,19,19 35:15
  47:5 53:17,17
seeing  46:14,15
  53:15
seek  36:9 48:16
seen  18:5 46:19
select  8:23
selected  22:22
  32:13
selection  8:23
sell  18:25
seller  12:12
sending  34:13
sense  52:23
sent  22:25 23:1,5,5
  23:16 35:2
service  4:1 9:17

services  13:18
  17:13 19:2 26:24
set  33:8
setting  31:9
share  8:21 32:15
sharp  21:25
shell  19:10
shocked  18:17,17
shot  10:4 21:19
show  17:18
side  5:20 22:5
  36:18
sign  32:18,25 34:3
signature  13:12
significant  35:10
signing  32:15
signs  7:7
similar  5:13
similarly  4:7 13:2
  13:3
simply  46:3
single  16:6 24:13
sit  19:23
site  42:22 43:19
situated  4:7 13:2,3
situation  5:18,22
  6:9,15,17,22 9:5
  40:16 43:10 52:18
skewed  26:21
small  10:15
softball  9:11 22:7
  22:9
solutions  1:22
sophisticated  6:5
  6:17,18,19 7:1
  13:9 24:18 26:14
  30:10 33:7 43:11
sorry  16:19 19:6
  35:22 37:3
sort  26:23

sound  54:5
source  14:3 42:6
south  54:3,11
spd  43:20 52:9
specialty  12:20
specific  9:24 14:8
  14:12 15:6 43:1
specifically  11:7
  14:18 15:2,8
  17:15 24:20 29:25
spitzer  49:17
sponsored  9:20
stage  17:24 46:6
standard  24:13
  25:17 39:14 40:8
  41:6,8,9 49:16,20
  49:24,24 50:5
standardized  4:6
  11:12
standing  48:10
start  49:2
state  5:15 9:17
  33:5
statement  38:5,7
  40:20
statements  37:4
  40:5,7,13 46:7
states  1:1,11
statute  6:2,13 9:15
  10:16,25 11:2
  21:20 49:2
statutory  10:2
steven  1:5 3:7
stopped  10:2
store  12:16
street  1:23
stringent  40:8
strong  31:12,13
strongly  20:16
stutman  45:3

subject  49:20
subjected  13:7
  33:21
submit  41:25
  52:19
submitted  17:20
suffered  17:19
sufficient  4:12
  41:1 45:6
suggest  21:8 29:22
  30:17 31:2 41:7
suggested  15:8
  44:20 48:23
suggesting  29:6
  30:21 31:22 33:3
  36:11
suggestion  21:25
suing  12:4
suit  10:5
suite  1:23
summary  18:24
  23:19,25 28:23,25
  29:14,18 42:9
  46:24,24
supplied  25:17
  27:3
support  24:4
supports  42:2
suppose  32:1
sure  6:10 7:14
  11:19 13:15 15:7
  20:24,25 48:18
  49:6,12
surgery  11:12
surprised  10:9
  18:14
susman  2:2 3:6
systems  49:18

**t**

tailored  7:3 24:20
  29:25
take  5:3,5 9:4
  27:13 29:22 37:22
  39:5,17
taken  6:11 10:8
takes  43:19,20
talking  42:17 46:6
  51:17
talks  42:1
targeted  13:17
teamsters  29:23
  29:24
tell  18:24 19:13
  20:14
ten  8:11 24:3,16
  32:12 33:1
tended  8:15
terms  5:24 15:4
  18:10 23:23 24:19
  28:11 30:10,15
  31:8 34:16 37:12
  44:1,3,6,21,23
  49:5 51:19
thank  18:19 20:3
  21:3 41:13,14,17
  53:11,13
theodore  1:10
thing  40:21 41:6
things  37:25
think  5:24 8:15
  10:10 19:17 21:23
  22:15 31:10 38:18
  49:8,10 53:1
third  1:1 2:6 25:12
  32:4 38:24 42:20
thought  5:2 21:19
  21:19 23:8,11,15
  25:14 40:15

**thousands** 3:10 12:5 13:6
**threw** 22:10
**throw** 22:12
**thrust** 6:8
**time** 18:3,19 19:17 27:14 41:2 47:5 53:17
**times** 45:18
**title** 40:22
**today** 45:16 46:17
**told** 8:5
**top** 47:1
**touch** 45:16
**touched** 12:8
**touching** 52:24
**trade** 9:16
**traffic** 15:15
**transaction** 25:16 53:3
**transcriber** 54:12
**transcript** 54:4
**treated** 18:9
**treatment** 11:12
**treble** 14:23
**trickle** 3:22
**tried** 10:4
**true** 15:11 17:6 39:25
**try** 43:18
**trying** 5:24 18:25 19:9 41:6 45:9
**tunnel** 15:12,15 16:14
**turns** 41:3
**twice** 46:1
**two** 12:9 13:9 21:24 24:2 45:17 47:6,10
**type** 41:11,12

**typical** 17:2

**u**

**uh** 4:24
**underlying** 9:2 22:16
**understand** 5:18 11:22 14:8 30:7 34:4 43:8
**understood** 37:9
**undisputed** 17:24
**unequal** 21:15
**uniform** 11:12
**uniformly** 13:7
**unintended** 39:1
**union** 6:21 7:12,18 7:20 8:18 9:3 22:18,21 23:1 25:4,6 26:4,19 27:4 29:23,23 30:13 31:6,20,21 32:17,20 33:10,11 33:15,17 34:7,12 34:12,13,17,18,20 36:1,2,13,15,17,20 36:22,24,25 37:2,6 42:21 47:17 49:3 49:4 51:11,15,15
**union's** 48:10
**unions** 5:20 22:2 23:22 26:15 31:11 31:12 32:14 33:19 34:21 35:7 48:13 48:24
**unique** 5:22 7:9,12 25:23
**uniquely** 17:8 41:24
**united** 1:1,11 47:19,22,22
**universities** 7:6

**university** 52:18
**unjust** 3:14
**unknown** 2:7
**unlawful** 9:18
**unthinking** 39:15
**updated** 15:4 17:1 50:25
**usual** 17:3

**v**

**vanishing** 45:20
**varied** 45:9
**veritext** 1:22
**versus** 3:3,23 12:11 45:4 47:19 49:16,17
**victimize** 31:10
**view** 9:4
**violated** 14:13 19:14
**violation** 50:14
**violations** 50:9,12
**virtually** 10:16
**visit** 15:9
**vs** 1:6

**w**

**w** 2:2
**wait** 20:1
**walk** 24:6
**walked** 12:15 13:10
**want** 6:10 13:21 19:9,23 20:14 36:19 37:24 39:19 41:19 53:11
**wanted** 8:10,21 49:21
**wants** 32:15
**wave** 40:22
**way** 6:24 9:25 13:12 17:12 21:12

34:5 39:13 40:12 41:7,8 44:11
**we've** 18:5
**website** 16:4 42:18 42:23,25 43:3,6,14 43:15,18,19 44:11 44:11 46:12,12,21 52:5,10
**weird** 20:10,13
**welcome** 41:16
**went** 44:15
**whey** 23:11
**whichever** 30:12 30:13
**wholly** 25:16
**wilner** 5:14
**wine** 10:9 12:12 12:15
**wines** 12:21
**wonderful** 21:3
**words** 44:19
**work** 37:25 41:9
**worked** 34:5
**working** 37:20
**works** 41:7
**worldwide** 17:17
**worry** 27:12
**writing** 53:2
**wrong** 50:15
**wrote** 52:23
**www** 43:22
**www.emblemhe...** 46:11

**y**

**yeah** 9:8 12:13 22:8 25:5 27:13 27:15 28:17,18 35:17,22 36:6 42:8 51:7 52:14
**year** 39:8

**york**   2:4,6 4:8
   5:19 7:20 8:18,20
   10:1,15,25 14:14
   14:21 15:25 17:5
   21:24 23:21 24:3
   26:1 28:2 31:12
   31:16 32:13 33:5
   35:5,6 39:7 40:21
   41:10,11 42:22
   43:1 45:9,17 47:2
   49:18 50:11 52:18
**york's**   14:13 19:15